DEPARTMENT OF CIVIL RIGHTS *ex rel* LANPHAR v A & C CARRIERS

Docket No. 83160. Submitted January 8, 1986, at Grand Rapids. Decided February 3, 1987.

The Department of Civil Rights (hereinafter referred to as claimant) filed a claim before the Civil Rights Commission alleging that A & C Carriers, an interstate trucking company (hereinafter referred to as respondent), had violated Richard Lanphar's civil rights by refusing to employ Lanphar on the basis of a physical handicap in violation of the Handicappers' Civil Rights Act. The commission determined that Lanphar had been unlawfully rejected on the basis of a handicap, i.e., a back condition, which was unrelated to his ability to perform the duties of the truck-driving job he had applied for. Respondent appealed to the Muskegon Circuit Court, Ronald H. Panucci, J., which reversed the commission's decision, ruling that Lanphar had failed to prove he had a handicap for which he could be entitled to the protection of the Handicappers' Civil Rights Act. On appeal, the Court of Appeals, in an unpublished per curiam opinion (Docket No. 59787, June 26, 1984), reversed the circuit court and remanded for further proceedings, holding that Lanphar was not required to allege and prove himself to be in fact handicapped in order to be eligible for the relief provided by the Handicappers' Civil Rights Act. On remand, the circuit court again reversed the commission's decision and entered a judgment in favor of respondent, from which claimant appealed.

The Court of Appeals *held:*

An employer violates an individual's civil rights if he fails or refuses to hire the individual on the basis of a handicap that is unrelated to the individual's ability to perform the duties of the

REFERENCES

Am Jur 2d, Carriers § 40.

Am Jur 2d, Job Discrimination §§ 111 *et seq.*

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 893.

See also the annotations in the Index to Annotations under Disabled Persons.

particular job or position. In this case, respondent had not violated Lanphar's civil rights, since Lanphar would not have been able to perform the duties of the job he had applied for because a preemployment x-ray examination of his back indicated the back condition disqualified him from driving a vehicle involved in interstate commerce as provided by federal motor carrier safety regulations.

Affirmed.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION.

An employer violates a job applicant's civil rights if he fails or refuses to hire the applicant on the basis of a handicap that is unrelated to the applicant's ability to perform the duties of the particular job or position (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — INTERSTATE MOTOR CARRIERS.

An interstate motor carrier which fails or refuses to hire a job applicant on the basis of a physical condition that, under federal motor carrier safety regulations, disqualifies the applicant from operating a vehicle involved in interstate commerce does not violate the applicant's rights under the Handicappers' Civil Rights Act (MCL 37.1202[1][a]; MSA 3.550[202][1][a]; 49 CFR 391.1 et seq.).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Martin J. Vittands,* Assistant Attorneys General, for claimant.

*Landman, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg*), for respondent.

Before: R. M. MAHER, P.J., and ALLEN and R. R. LAMB,* JJ.

PER CURIAM. Claimant, Department of Civil Rights, appeals as of right from a circuit court judgment reversing an order of the Civil Rights Commission.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Claimant brought this action against respondent, A & C Carriers, on behalf of Richard Lanphar who claimed that he was rejected from employment on the basis of a physical handicap, in violation of MCL 37.1102; MSA 3.550(102). Respondent is a trucking company which hauls petroleum and asphalt products and is engaged in interstate commerce. Lanphar applied for a job as a truck driver with respondent on May 9, 1977, and was interviewed by Howard Westcott, respondent's safety director, on May 17, 1977. Westcott referred Lanphar to a Dr. Tazelaar for a physical examination. Defendant's standard preemployment procedure called for x-ray examinations and, consequently, Lanphar underwent chest and back x-rays.

After the examination, Dr. Tazelaar issued a United States Department of Transportation card to Lanphar, a requirement for operating a vehicle in interstate commerce.[1] Lanphar showed the DOT card to Westcott and was given a starting date for employment.

The day before he was scheduled to report for work, Lanphar learned from Westcott that he had been rejected from employment as a truck driver because of a spinal injury. His DOT card was rescinded. Lanphar subsequently obtained employment as a carpenter.

A referee hearing was held on May 8, 1979. In an opinion dated December 18, 1979, the Civil Rights Commission determined that Lanphar was unlawfully rejected from employment on the basis of a handicap which was unrelated to his ability to perform the duties of the job applied for. Respon-

---

[1] An interstate motor carrier driver is required to maintain on his person a medical examiner's certificate that he is physically qualified to drive a motor vehicle. Section 391.41(a) of the Motor Carrier Safety Regulations, 49 CFR 391.41(a).

dent appealed to the Muskegon Circuit Court, which held that Lanphar had presented insufficient evidence that he was handicapped and, therefore, had not proven that he fell within the class of persons protected by the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.* On August 19, 1981, the circuit court issued an order reversing the decision of the commission.

Claimant appealed to this Court. In an unpublished per curiam opinion, this Court reversed the decision of the trial court, concluding that

> an individual claiming protection under the Act is not required to allege and prove himself or herself to be, in fact, handicapped in order to be eligible for the relief provided by the Act. It is only necessary for a claimant to show that an employer, believing or suspecting such claimant to be handicapped, committed one of the employment practices prohibited by the Act. [Docket No. 59787, June 26, 1984.]

This Court remanded the case to the circuit court for resolution of issues raised by the parties but not decided by the circuit court. In an order dated January 25, 1985, the circuit court again reversed the decision of the commission and entered judgment in favor of respondent from which claimant brings the instant appeal.

An appeal to the circuit court from a final order of the Civil Rights Commission is a trial de novo. *Dixon v Ford Motor Co,* 402 Mich 315, 317; 262 NW2d 666 (1978), reh den 402 Mich 965 (1978); Const 1963, art 5, § 29. This Court must make an independent review of the whole record but will not substitute its judgment for that of the circuit court unless it is left with a definite and firm

conviction that a mistake has been made. *Dixon, supra,* p 319; MCR 2.613(C).

Claimant first challenges the circuit court's holding that DOT regulations preempt the handicappers' act. We agree with claimant that the state act is not preempted by the federal regulations.

Pursuant to 49 USC 304,[2] the DOT has promulgated regulations regarding the minimum qualifications of motor carrier drivers who operate their motor carriers in interstate commerce. Michigan's handicappers' act prohibits discrimination on the basis of a handicap in certain public areas.

In *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd (After Remand),* 416 Mich 706, 713-714; 332 NW2d 134 (1982), the Supreme Court discussed the two lines of analysis used to describe situations in which federal legislation has preempted state lawmaking on a subject in question. The Court stated:

> The first is so-called "field pre-emption" in which any state legislation, harmonious or otherwise, is invalid if it seeks to regulate in any area in which Congress has intended to completely occupy the field. See *Rice v Santa Fe Elevator Corp,* 331 US 218; 67 S Ct 1146; 91 L Ed 1447 (1947).
>
> The second type of pre-emption is called "conflict pre-emption" and exists in circumstances in which a state regulation is invalid under the supremacy clause, even though Congress has not fully foreclosed state legislation in a particular area, because the state regulation is held to be in conflict with the federal regulation. The two-prong test to determine if a conflict pre-emption exists was most clearly articulated in *Ray v Atlantic Richfield Co,* 435 US 151, 158; 98 S Ct 988; 55 L Ed 2d 179 (1978):

---

[2] Since repealed and replaced by 49 USC 3102.

"A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility' . . . or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

Clearly, this is not a case of field preemption, for the handicappers' act is not an attempt by the state to regulate interstate commerce. Rather, the handicappers' act provides a handicapped individual with a remedy for the violation of his civil rights. It is well-settled that interstate carriers are subject to state civil rights laws. *People v Bob-Lo Excursion Co,* 317 Mich 686; 27 NW2d 139 (1947), aff'd 333 US 28; 68 S Ct 358; 92 L Ed 455 (1948).

Furthermore, this is not a case of conflict preemption because compliance with the motor carriers safety regulations, 49 CFR 391.1 *et seq.,* and the handicappers' act is not a physical impossibility nor does the handicappers' act stand as an obstacle to the accomplishment and execution of the purpose and objective of the safety regulations. If an individual is not qualified under federal law to drive a motor carrier within interstate commerce, it cannot be a violation of the handicappers' act to refuse to employ the individual as an interstate motor carrier driver.

In this case, we agree with the trial court that by virtue of the federal regulations respondent did not violate Lanphar's civil rights. An employer violates an individual's civil rights if he fails or refuses to hire the individual because of "a handicap[3] that is unrelated to the individual's ability to

---

[3] A handicap is defined as

a determinable physical or mental characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic: . . . is unrelated to the individual's ability to perform the duties of a particular job

perform the duties of a particular job or position."
MCL 37.1202(1)(a); MSA 3.550(202)(1)(a). In this
case, respondent refused to hire Lanphar as a
truck driver because he did not have a valid DOT
card. Dr. Tazelaar refused to issue Lanphar a valid
DOT card because of Lanphar's spinal injury.

Section 391.41 of the motor carrier safety regu-
lations, 49 CFR 391.41, provides:

> (a) A person shall not drive a motor vehicle
> unless he is physically qualified to do so and . . .
> has on his person the original, or a photographic
> copy, of a medical examiner's certificate that he is
> physically qualified to drive a motor vehicle.
>
> (b) A person is physically qualified to drive a
> motor vehicle if that person—
>
> \* \* \*
>
> (2) Has no impairment of the use of:
>
> \* \* \*
>
> (ii) An arm, foot, or leg which interfers with the
> ability to perform normal tasks associated with
> operating a motor vehicle; or any other significant
> limb defect or limitation which interferes with the
> ability to perform normal tasks associated with
> operating a motor vehicle; or has been granted a
> waiver pursuant to § 391.49.

The individual must undergo a physical examina-
tion by a licensed doctor of medicine or osteopa-
thy. 49 CFR 391.43(a). The physical examination
must be performed substantially in accordance
with the instructions provided by the DOT. The
instructions provide in part:

---

or position, or is unrelated to the individual's qualifications for
employment or promotion.

As this opinion indicates, we conclude that Lanphar's back condi-
tion was related to his ability to perform the duties of a truck driver
in interstate commerce. Thus, by definition, his back injury is not
truly a handicap.

.

The examining physician should be aware of the rigorous physical demands and mental and emotional responsibilities placed on the driver of a commercial motor vehicle. In the interest of public safety the examining physician is required to certify that the driver does not have any physical, mental, or organic defect of such a nature as to affect the driver's ability to operate safely a commercial motor vehicle.

*General information.* The purpose of this history and physical examination is to detect the presence of physical, mental, or organic defects of such a character and extent as to affect the applicant's ability to operate a motor vehicle safely. The examination should be made carefully and at least as complete as indicated by the attached form. History of certain defects may be cause for rejection or indicate the need for making certain laboratory tests or a further, and more stringent, examination. Defects may be recorded which do not, because of their character or degree, indicate that certification of physical fitness should be denied. However, these defects should be discussed with the applicant and he should be advised to take the necessary steps to insure correction, particularly of those which, if neglected, might lead to a condition likely to affect his ability to drive safely.

\* \* \*

*Spine.* Note deformities, limitation of motion, or any history of pain, injuries, or disease, past or presently experienced in the cervical or lumbar spine region. If findings so dictate, radiologic and other examinations should be used to diagnosis congenital or acquired defects or spondyloisthesis and scoliosis. [49 CFR 391.43(c).]

In this case, Lanphar did not pass the physical examination because the x-rays "suggested" spon-

dylolysis.[4] James M. Glessner, M.D., hired by claimant for an independent review of the x-rays, described spondylolysis as

> an acquired defect in the bony architecture, usually present in the lumbar spine, affecting what we term the pars interarticularis. That is the supporting structure for the bone, which exists between the articulating joints and below, with each set of vertebrae. I say it is acquired, it is not a congenital problem, it is something that is acquired usually during the first four or five years of life, although probably there is a congenital predisposition to this defect. It is, in effect, a weak link in the spinal supporting structures, and it is the precursor in some cases, if it is bilateral, to a condition called spondylolisthesis [sic], where there is the actual slippage of one vertebra forward to the other, due to the lack of stability.

Dr. Glessner agreed with Dr. Tazelaar that the back x-rays were very suggestive of spondylolysis and testified that he would not qualify Lanphar for employment as an interstate motor carrier driver. Dr. Glessner stated:

> [T]he job, as I viewed it, and certainly reinforced by weights and other aspects of the actual day-to-day activities, as far as lifting, bending, twisting, and so on, I think it could be considered heavy activity. People who have this particular condition

---

[4] Neither party presented Dr. Tazelaar at the hearing or by way of deposition. Despite the referee's suggestion that respondent present Dr. Tazelaar's testimony, respondent declined to do so, in furtherance of its belief that it did not have the burden of proof in this case. While it is true that claimant had the burden of establishing a violation of the handicappers' act, respondent was defending the suit on the grounds that Lanphar's back condition was related to his ability to perform the job. This defense would have been presented best by Dr. Tazelaar's testimony. All of the evidence concerning the basis for Dr. Tazelaar's alleged rejection of Lanphar is hearsay. With all but one exception, the hearsay testimony was admitted without objection.

are ill-suited to engage in heavy activity because of the stresses and straining applied to the skeletal system and to the potential weak link, which at any time can create considerable disability and need for medical care.

\* \* \*

Well, my opinion is that the person with this condition is not qualified to do that kind of work. Certainly there are instances where people with this lesion do do that work, I can't deny that; but there was nothing ahead of time that they had this problem. I certainly would not qualify them for that type of activity or recommend that they do it.

Thus, it was the opinion of two doctors, including an independent doctor hired by claimant, that Lanphar was not qualified for employment as an operator of a motor vehicle in interstate commerce. Claimant did not produce any evidence that Lanphar was physically qualified to drive a motor vehicle in interstate commerce.[5] Furthermore, Lanphar refused to undergo a tomogram which would have confirmed or denied the diagnosis of spondylolysis. Since Lanphar failed to obtain a medical examiner's certificate that he was physically qualified to drive a motor vehicle federal law prohibited him from driving a motor carrier in interstate commerce. Accordingly, Lanphar was not able to perform the duties of the job applied for. Thus, it cannot be said that Lanphar's back condition is unrelated to his ability to perform the duties of an interstate motor carrier driver. MCL 37.1202(1)(a); MSA 3.550(202)(1)(a). The decision of the circuit court is affirmed.

Affirmed.

---

[5] The DOT regulations provide a method of review by the Director of the Bureau of Motor Carrier Safety where two or more medical examiners disagree as to whether the individual is physically qualified to drive a motor carrier in interstate commerce. 49 CFR 391.47.