MURPHY v MUSKEGON COUNTY

Docket No. 75979. Submitted May 6, 1987, at Grand Rapids. Decided
    September 8, 1987.
        Audrey J. Murphy, Melvin P. Whitten, III, and Glenda C. Whit-
        ten brought an action in the Muskegon Circuit Court against
        Muskegon County and the Muskegon County Board of Public
        Works, Wastewater System No. 1, seeking damages for injuries
        sustained by Audrey Murphy and Melvin Whitten when they
        struck a wire cable while riding a motorcycle on a vacated road
        at the location of the sewage treatment facility. Glenda Whit-
        ten sought damages for loss of consortium. Defendants moved
        for summary judgment alleging immunity from suit. The trial
        court, James M. Graves, Jr., J., denied the motion and the case
        proceeded to trial. The jury returned a verdict finding the
        defendants negligent and that the defendants' negligence con-
        stituted a proximate cause of plaintiffs' injuries. The jury also
        found that defendants' conduct did not create an intentional
        nuisance. The jury found $100,000 in damages for Melvin
        Whitten, $50,000 for Glenda Whitten and $50,000 for Audrey
        Murphy. The jury also found Melvin Whitten ninety-six per-
        cent negligent and Audrey Murphy ninety-nine percent negli-
        gent. The trial court thereafter reduced the damage award
        accordingly. Plaintiffs filed a motion for judgment notwith-
        standing the verdict or a new trial, which was denied. A
        judgment was thereafter entered. Plaintiffs appealed from that

REFERENCES
Am Jur 2d, Evidence §§ 336 et seq.
Am Jur 2d, Judgments §§ 106 et seq.
Am Jur 2d, Negligence §§ 426 et seq.
Am Jur 2d, New Trial §§ 137 et seq.
Am Jur 2d, States §§ 99 et seq.
Am Jur 2d, Trespass § 1.
Am Jur 2d, Trial §§ 573 et seq.
Attacking or supporting credibility of witness by evidence in form
    of opinion or reputation, under Rule 608(a) of Federal Rules of
    Evidence. 52 ALR Fed 440.
Practice and procedure with respect to motions for judgment not-
    withstanding or in default of verdict under Federal Civil Proce-
    dure Rule 50(b) or like state provisions. 69 ALR2d 449.

judgment. Defendants cross-appealed from the denial of their summary judgment motion. Thereafter, the parties stipulated to the reopening of the case by the trial court to redecide defendants' summary judgment motion in light of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984). Defendants' motion was thereafter granted and plaintiffs also appeal from that order. Defendants' cross-appeal was dismissed by stipulation of the parties.

The Court of Appeals *held:*

1. The jury did not err in allocating the amount of comparative negligence. The findings by the jury in this regard were not against the great weight of the evidence. The trial court's denial of a JNOV or new trial was not an abuse of discretion.

2. The trial court did not err in its instructions to the jury on trespassers and intoxication.

3. The trial court's refusal to allow the cross-examination of a deputy sheriff who investigated the accident in question regarding the deputy sheriff's dismissal from employment subsequent to his investigation for allegedly abusing a drunken prisoner was not an abuse of discretion. The line of questioning was not probative of the deputy sheriff's truthfulness regarding his investigation of the accident in question.

4. The operation of the wastewater facility constituted a governmental function and did not constitute a proprietary function. The trial court correctly determined that defendants were immune from suit.

Affirmed.

1. NEGLIGENCE — JURY — COMPARATIVE NEGLIGENCE.

The jury in a negligence case where the negligence of the plaintiff is at issue is empowered to determine the percentage of comparative fault on the part of the plaintiff.

2. JUDGMENTS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A trial court, in deciding a motion for a judgment notwithstanding the verdict, must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that can be drawn from the evidence; the motion may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury; if the evidence is such that reasonable persons could differ, the question is one for the jury and the motion must be denied.

3. NEW TRIAL — APPEAL.

It is within the trial court's sound discretion to grant or deny a motion for a new trial; the standard of review is whether the

verdict is against the overwhelming weight of the evidence; a reviewing court affords deference to the trial court's decision and will not substitute its judgment unless a review of the record reveals a miscarriage of justice.

4. NEW TRIAL — REMEDIES.

A trial court does not have an unlimited power to grant a new trial merely because it does not agree with the verdict; the court may not substitute its judgment for that of the finders of fact.

5. TRIAL — STANDARD JURY INSTRUCTIONS.

Pertinent portions of the Standard Jury Instructions must be given if they are applicable, accurately state the applicable law, and are requested by a party; the determination whether a particular requested Standard Jury Instruction is applicable and accurately states the law based on the individual characteristics of a given case is within the sound discretion of the trial court. (MCR 2.516[D][2][a]-[c]).

6. APPEAL — STANDARD JURY INSTRUCTIONS.

A reviewing court should not reverse for a violation of the court rule regarding the giving of Standard Jury Instructions unless it concludes that noncompliance with the rule resulted in such unfair prejudice that the failure to vacate the jury award would be inconsistent with substantial justice (MCR 2.516[D][2][a]-[c]).

7. TRESPASS — WORDS AND PHRASES.

A trespass is every unauthorized intrusion or invasion upon the private premises or lands of another.

8. EVIDENCE — WITNESSES — CHARACTER EVIDENCE.

Character evidence offered to impeach or support a witness' credibility, other than evidence of a prior conviction for a crime, must be limited to the particular character trait of truthfulness or untruthfulness.

9. GOVERNMENTAL IMMUNITY — WASTEWATER SYSTEMS.

The operation of a wastewater system by a governmental entity as expressly authorized by statute is a governmental function entitled to governmental immunity where the operation of the system is not primarily for generation of a pecuniary profit and the governmental entity is not engaged in a proprietary function (MCL 123.731 *et seq.*; MSA 5.570[1] *et seq.*).

10. GOVERNMENTAL IMMUNITY — PROPRIETARY FUNCTIONS.

A proprietary function is an activity which is conducted primar-

ily for the purpose of producing a pecuniary profit for a governmental agency, excluding, however, any activity normally supported by taxes or fees (MCL 691.1413; MSA 3.996[113]).

*James J. Kobza, P.C.* (by *James J. Kobza*), for plaintiffs.

*Knudsen, Wasiura & Associates, P.C.* (by *Harry J. Knudsen*), for defendants.

Before: CYNAR, P.J., and SAWYER and J. S. THORBURN,* JJ.

CYNAR, P.J. Plaintiffs appeal as of right from a January 9, 1984, judgment and order denying their motion for a new trial or judgment notwithstanding the verdict (JNOV). In addition, plaintiffs appeal from a June 3, 1986, order and judgment which granted defendants' motion for summary disposition on the basis that the instant suit was barred by governmental immunity. We affirm.

The events giving rise to the instant cause of action occurred in the late evening hours of September 29, 1979, and the early morning hours of September 30, 1979. Plaintiff Audrey Murphy was a passenger on a motorcycle driven by plaintiff Melvin Whitten. They drove from a restaurant parking lot to the Muskegon County Wastewater System, a comprehensive sewage treatment facility, which was located on Hall Road. The wastewater system had installed some twenty-five gates and entrances around the facility's twenty-five-mile perimeter. Approximately twelve to thirteen of these entrances were placed on vacated roads. Hall Road was one of these vacated roads. Apparently, the gates had been constantly vandalized.

At the time Murphy and Whitten were driving

---

* Circuit judge, sitting on the Court of Appeals by assignment.

at the Hall Road location of the wastewater system, a wire cable was connected to two posts, stretching across Hall Road. As they proceeded on Hall Road, they struck the cable and suffered injuries.

As a result of the accident, Murphy and Whitten and his wife, Glenda Whitten, filed separate complaints which were consolidated by a stipulation and order dated June 22, 1983. Subsequently, on November 21, 1983, defendants moved for accelerated judgment, alleging immunity from suit. Defendants' motion was denied on December 7, 1983, and the case proceeded to trial.

Using a special verdict form, on December 15, 1983, the jury found defendants negligent and that defendants' negligence constituted a proximate cause of plaintiffs' injuries. The jury also found that defendants' conduct did not create an intentional nuisance. The jury found $100,000 in damages for Melvin Whitten, $50,000 for Glenda Whitten and $50,000 for Murphy. The jury concluded that Melvin Whitten was ninety-six percent negligent while Murphy was found ninety-nine percent negligent. In accordance with this jury finding, the trial court reduced the damage award.

Thereafter, on December 27, 1983, plaintiffs filed a motion for JNOV or a new trial, which was denied. On January 9, 1984, judgment was entered on the jury verdict.

On January 17, 1984, plaintiffs appealed from the January 9, 1984, order and judgment. Defendants thereafter cross-appealed from the denial of their motion for accelerated judgment on the basis of governmental immunity. Following the filing of the appeals, the trial court entered a stipulation and order regarding settlement of the record and which also, with the parties' argreement, reopened the case to redecide defendants' summary disposi-

tion motion on immunity in light of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). Defendants' motion was granted on June 3, 1986, and defendants' cross-appeal was dismissed pursuant to a stipulation of the parties.

Plaintiffs raise six issues on appeal, none of which merit reversal of the lower court's rulings. First, plaintiffs argue that the jury's allocation of plaintiffs Murphy and Melvin Whitten's negligence was so grossly disproportionate as to contravene the concept of comparative negligence. We do not agree.

The doctrine of comparative negligence was adopted by our Supreme Court in *Placek v Sterling Heights*, 405 Mich 638, 650; 275 NW2d 511 (1979), reh den 406 Mich 1119 (1979). Comparative negligence replaced the doctrine of contributory negligence because the latter doctrine barred plaintiffs from recovery even if they were minimally negligent. In the interest of fairness, the Supreme Court, in *Placek, supra,* declared that the better approach would be to apply a "pure" comparative negligence approach rather than the hybrid fifty percent rule which prevents recovery if a plaintiff's negligence exceeds fifty percent of the total fault. *Id.,* p 660. "Only pure comparative negligence truly distributes responsibility according to fault of the respective parties." Schwartz, Comparative Negligence (Indianapolis: Allen Smith Co, 1974), § 21.3, p 347, cited in *Placek, supra,* p 660.

Quoting from *Kirby v Larson,* 400 Mich 585, 644; 256 NW2d 400 (1977), the Supreme Court in *Placek, supra,* p 661, stated as follows regarding the nature of the "pure" comparative negligence doctrine:

The doctrine of pure comparative negligence does not allow one at fault to recover for one's own fault, because damages are reduced in proportion to the contribution of that person's negligence, *whatever that proportion is.* The wrongdoer does not recover to the extent of his fault, but only to the extent of the fault of others. To assume that in most cases the plaintiff is more negligent than the defendant is an argument not based on equity or justice or the facts. What pure comparative negligence does is hold a person fully responsible for his or her acts and to the full extent to which they cause injury. That is justice.

The above language suggests that the jury has discretion to determine the percentage of comparative fault on the part of plaintiffs. We reject plaintiffs' contention that pure comparative negligence in this case would effectively bar their recovery even though the jury found defendants negligent.' The comparative negligence doctrine was implemented as a means of avoiding the inequities and unfairness of the contributory negligence doctrine, which, if applicable to this case, would have *completely* barred plaintiffs from any recovery. As further support for our conclusion, we note that in *Placek, supra,* p 662, the Court indicated that a special verdict form shall be used in negligence cases where the negligence of the plaintiff is at issue. We construe this finding as an indication that the jury would be empowered to allocate the percentage of comparative fault in these types of cases. Therefore, we find no error in the allocation of the amount of negligence to plaintiffs Murphy and Melvin Whitten.

Next, plaintiffs argue that the grossly disproportionate allocation of comparative negligence was against the great weight of the evidence. In *Slanga v Detroit,* 152 Mich App 220, 224; 393 NW2d 487

(1986), this Court stated that when a trial court is deciding a motion for a JNOV, the court must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If the evidence is such that reasonable persons could differ, the question is one for the jury and JNOV is improper. A JNOV may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury. *Willoughby v Lehrbass,* 150 Mich App 319, 344; 388 NW2d 688 (1986).

Regarding the grant of a new trial motion, in *May v Parke, Davis & Co,* 142 Mich App 404, 410-411; 370 NW2d 371 (1985), lv den 424 Mich 878 (1986), this Court stated:

> It is within the trial court's sound discretion to grant or deny a motion for new trial. The standard of review is whether the jury's verdict was against the overwhelming weight of evidence. A reviewing court affords deference to the trial judge's decision since the trial judge, having heard the witnesses, is uniquely qualified to judge the jury's assessment of their credibility. This Court will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage of justice. [Citations omitted.]

See also *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 (1985). A trial court does not have an "unlimited power to grant a new trial merely because it does not agree with the verdict. The court may not substitute its judgment for that of the finders of fact." *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982), lv den 417 Mich 954 (1983).

After reviewing the record, we conclude that there was considerable evidence to determine

whether plaintiffs Murphy and Melvin Whitten were negligent. There was ample testimony indicating that they may have been intoxicated and that their intoxication proximately caused their injuries or prohibited them from exercising the care of a reasonably prudent person under the circumstances.

Further, as defendants contend, there was sufficient evidence to permit a jury determination on whether there was a "No Trespassing" sign on the cable and whether plaintiffs Murphy and Melvin Whitten were negligent in not seeing the sign in time to stop. The finding by the jury on these issues was not against the great weight of the evidence and the trial court's ruling which denied plaintiffs' motion for JNOV or new trial did not constitute an abuse of discretion.

Plaintiffs' third claim of error is the issuance by the trial court of several standard jury instructions on trespassers.

MCR 2.516(D)(2)(a)-(c), formerly GCR 1963, 516.6(2), states that pertinent portions of the Michigan Standard Jury Instructions must be given if they are applicable, accurately state the applicable law, and are requested by a party. See also *Guider v Smith,* 157 Mich App 92, 98; 403 NW2d 505 (1987). Whether a particular requested instruction is applicable and accurately states the law based on the individual characteristics of a given case is left to the sound discretion of the trial court. *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985). Further, the Court in *Johnson* stated that a reviewing court should not reverse for a violation of MCR 2.516 unless it concludes that noncompliance with the rule resulted in such unfair prejudice that the failure to vacate the jury award would be inconsistent with substantial justice. 423 Mich 327.

We find no error in the issuance of the instructions on trespassers. The instructions were requested by defendants and involved SJI2d 19.01, 19.02, 19.07, and a special related instruction. These instructions were applicable to the case. The evidence indicated that plaintiff Melvin Whitten drove his motorcycle down a roadway where there was a visible "Road Closed" sign, a "Dead-end Road" sign, and a large yellow "No Trespassing" sign. If believed, the jury could infer that the driving of the motorcycle down this roadway constituted a trespass. A trespass is every unauthorized intrusion or invasion upon the private premises or lands of another. *Giddings v Rogalewski,* 192 Mich 319, 326; 158 NW 951 (1916); *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389, 396; 283 NW2d 749 (1979), vacated in part on other grounds 407 Mich 936 (1979). Finally, the instructions accurately stated the applicable law. Hence, we find no error.

Even if we agree with plaintiffs that the instructions were inapplicable, plaintiffs were not unfairly prejudiced. The instructions, when read as a whole, constituted a fair and proper charge to the jury.

Plaintiffs' fourth contention deals with the issuance of SJI2d 13.02 and 12.01 regarding plaintiffs Murphy and Melvin Whitten's intoxication. They argue that there was simply no evidence to support such an instruction. We must disagree.

As we discussed in an earlier portion of this opinion, there was ample testimony indicating that they may have been intoxicated. They admitted drinking at least two or three beers earlier in the evening. The officers investigating the accident believed that Murphy was intoxicated since she stumbled, her speech was slurred and her walking was impaired. Based on this evidence, it was not

error for the trial court to issue an intoxication instruction. Moreover, even if we assume error, it was harmless.

Plaintiffs also claim error by the trial judge when he limited their cross-examination of John LaBash regarding his termination as a deputy sheriff subsequent to his investigation of the accident. During plaintiffs' cross-examination of La-Bash, plaintiffs sought to question him regarding his dismissal as a deputy sheriff for allegedly abusing a drunk prisoner.

Plaintiffs argue that this line of inquiry was permissible under MRE 608(b) which provides in pertinent part:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The extent to which a witness may be cross-examined on questions affecting his or her credibility rests in the sound discretion of the trial court. *People v Bouchee,* 400 Mich 253, 266-267; 253 NW2d 626 (1977). In *Bouchee,* our Supreme Court held that character evidence offered to impeach or support a witness' credibility, other than evidence of a prior conviction for a crime, must be limited to the particular character trait of truthfulness or untruthfulness.

We find no abuse of discretion in the trial judge's refusal to allow cross-examination of La-Bash concerning his termination as a deputy sheriff. That line of inquiry was not probative of LaBash's truthfulness regarding his investigation of the accident in question.

Finally, plaintiffs argue error by the trial court in holding that defendants were immune from suit on the basis of *Ross, supra.* Plaintiffs contend that the various enterprises carried out at the wastewater facility are conducted primarily for the purpose of producing a pecuniary profit. Defendants argue that the primary purpose of the wastewater facility is sewage treatment. Since the system is supported through fees and taxes, defendants are immune from tort liability.

MCL 691.1407(1); MSA 3.996(107)(1) provides:

> (1) Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

In *Ross, supra,* p 620, the Supreme Court defined a "governmental function" as:

> [A]n activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law. When a governmental agency engages in mandated or authorized activities, it is immune from tort liability, unless the activity is proprietary in nature (as defined in § 13 [MCL 691.1413; MSA 3.996(113)]) or falls within one of the other statutory exceptions to the governmental immunity act. Whenever a governmental agency en-

gages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law (*i.e.,* an *ultra vires* activity), it is not engaging in the exercise or discharge of a governmental function. The agency is therefore liable for any injuries or damages incurred as a result of its tortious conduct.

In this case, the operation of the wastewater system by defendants constituted a governmental function since this activity was expressly authorized by 1957 PA 185, MCL 123.731 *et seq.*; MSA 5.570(1) *et seq.* Therefore, the remaining question is whether any of these activities associated with the facility fall under the immunity exception found in MCL 691.1413; MSA 3.996(113), which essentially denies immunity to governmental entities if the activity engaged in is primarily for generation of a pecuniary profit, meaning the governmental entity is engaged in a "proprietary function."

A "proprietary function" is defined as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." MCL 691.1413; MSA 3.996(113). Recently, in *Hyde v University of Michigan Regents,* 426 Mich 223; 393 NW2d 847 (1986), our Supreme Court elaborated on the statutory definition. The Court stated that the generation of profit by the agency is relevant for determining whether the agency is engaged in a proprietary function. If an agency pursues an activity despite consistent losses, this may be evidence that the primary purpose is not to make a pecuniary profit, but it is not conclusive evidence. Alternatively, the fact that the activity generates a consistent profit may evidence an intent to produce a profit. However, this too would be insufficient since

§ 13 requires the generation of a profit as the *primary* motive. *Id.,* pp 258-259.

In addition, a second relevant consideration is where the profit is deposited and the manner in which it is spent. If the profit is used to finance an agency's unrelated functions, the agency may be said to be engaging in a proprietary function. But, if the funds are used to run the activity, this could be an indication that the primary purpose of the activity is nonproprietary. *Id.*

We find that the operation of the wastewater facility does not constitute a proprietary function. The generated revenues are not a result of activities conducted primarily to produce a profit. The revenues are used to run the operation of the facility and reduce the rates charged for use of the system. Moreover, the system is supported by taxes and fees and the farming operation by defendants is a primary part of the sewage disposal system.

Affirmed.