BRUNSON v E & L TRANSPORT COMPANY

Docket No. 101334. Submitted February 2, 1989, at Detroit. Decided
    May 15, 1989.
    Clydean Brunson brought an action in the Wayne Circuit Court
        against her employer, E & L Transport Company, alleging
        sexual discrimination in regard to her unsuccessful efforts to
        become a truck driver for defendant. The trial court, James
        Garber, J., entered an order, following the jury's verdict for
        plaintiff, awarding plaintiff $120,000 for lost wages, $80,000 for
        emotional damages and, after a workers' compensation setoff of
        $33,179.36, $76,925.16 for prejudgment interest. Plaintiff was
        also awarded attorney fees and costs, for a total award of
        $275,000.80. Defendant appealed.
    The Court of Appeals *held:*
    1. The trial court properly denied defendant's motion for a
    directed verdict.
    2. Plaintiff's claim is not preempted by the Federal Motor
    Carrier Safety Regulations.
    3. The trial court did not abuse its discretion in admitting
    evidence of certain events occurring prior to November, 1980,
    for which any claim by plaintiff was time barred.
    4. The jury's verdict was not against the great weight of the
    evidence.
    5. The jury's award of $80,000 for emotional damages was not
    excessive.
    6. The trial court properly awarded prejudgment interest
    from the date plaintiff filed her complaint.
    Affirmed.

1. CIVIL RIGHTS — PRIMA FACIE CASE — SEX DISCRIMINATION.
    A plaintiff, to make a prima facie case of sex discrimination
        under the Civil Rights Act, must show that he or she is a
        member of a class protected under the act and that, for the
        same or similar conduct, he or she was treated differently than

REFERENCES
Am Jur 2d, Appeal and Error §§ 112, 113, 850-852, 881, 888-890; Job
    Discrimination §§ 14, 78-90, 700 *et seq.*, 704.
See the Index to Annotations under Sex Discrimination.

a member of the opposite sex; if the defendant employer asserts some legitimate nondiscriminatory reasons for the differing treatment, plaintiff must show that the reasons asserted were a mere pretext for discrimination (MCL 37.2202; MSA 3.548[202]).

2. CIVIL RIGHTS — DISPARATE TREATMENT — FAILURE TO TRAIN EMPLOYEE.

The failure to train an employee to perform a particular job may by itself form the basis for a civil rights claim where that failure constitutes disparate treatment.

3. CONFLICT OF LAWS — CONFLICT PREEMPTION.

Federal law may preempt state law to the extent that the state law actually conflicts with federal law, i.e., where compliance with both state and federal law is physically impossible or where the state law would thwart the purpose and objectives of the federal law.

4. TRIAL — EVIDENCE — APPEAL.

The decision whether to admit certain evidence is within the trial court's sound discretion and will not be disturbed absent an abuse of discretion.

5. MOTIONS AND ORDERS — NEW TRIAL.

The grant or denial of a motion for a new trial is within the sound discretion of the trial court; the jury's verdict should not be set aside where there is competent evidence to support it.

6. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT.

The evidence must be viewed in the light most favorable to the nonmoving party in deciding a motion for a judgment notwithstanding the verdict and the motion should be granted only when, as a matter of law, there is insufficient evidence to make an issue for the jury.

7. APPEAL — JURY — VERDICT.

The Court of Appeals will not substitute its judgment for that of a jury unless the verdict was secured by improper methods, prejudice, or sympathy, or where it is so excessive as to shock the conscience; a verdict should not be reversed as excessive where it is within the range of the evidence produced at trial.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Janet M. Tooley*), for plaintiff.

*Damm & Smith, P.C.* (by *Geoffrey L. Smith* and *Michael J. Tauscher*), for defendant.

Before: DANHOF, C.J., and BEASLEY and MAC-
KENZIE, JJ.

BEASLEY, J. Defendant, E & L Transport Com-
pany, appeals as of right from a November 20,
1986, jury verdict in favor of plaintiff, Clydean
Brunson, on her Civil Rights Act claim.[1] In this
gender discrimination case, the jury awarded
plaintiff $120,000 for lost wages, $80,000 for emo-
tional damages and, after a workers' compensation
setoff of $33,179.36, $76,925.16 for prejudgment
interest. Plaintiff was also awarded attorney fees
and costs, for a total award of $275,000.80. On
appeal, we affirm.

Plaintiff's sexual discrimination claim arises out
of her unsuccessful efforts to become a truck
driver for defendant. Defendant is in the business
of transporting new cars to car dealers. In 1977,
plaintiff began working for defendant as a "drivea-
way." This job entailed driving new cars, individu-
ally, from defendant's yard directly to car dealers.
Defendant also employed "truck drivers" who
transported cars on semi-trailer car haulers. De-
fendant's requirement for entry into truck driving
positions—more specifically, into its truck driver
trainee program—was either two years truck driv-
ing experience or graduation from an accredited
truck driving school. Between 1977 and 1979, a
third group of employees, "yard workers," who
organized cars in the yard for loading onto the
haulers, convinced defendant to waive its regular
hiring criteria for those yard workers who wished
to transfer into truck driving positions. For such
yard workers, only an "easy" qualifying road test
would be required. All those who took this test,
apparently, passed it.

In 1979, several female driveaway employees,

---

[1] MCL 37.2101 et seq.; MSA 3.548(101) et seq.

including plaintiff, inquired about being accorded the same transfer-waiver for truck driving positions as had been given the yard workers. They were told to go home, bake pies and change diapers. As a result of a grievance filed by the driveaways, they won the same right to test for truck driving positions as had been given the yard workers.

However, while this grievance was pending, defendant began to prospectively "move its hiring requirements into compliance with [Department of Transportation regulations]." Out of twenty-five driveaways exercising their new-found opportunity to test for truck driver positions, only two, one male and one female, passed the new, stricter, yet largely subjective, road test thereafter utilized by defendant. Plaintiff was among those who allegedly failed the test. Several driveaways, including plaintiff, then successfully completed an accredited truck driving course. In November, 1980, plaintiff again took the road test given by defendant and, again, was told she had failed.

Due to the statute of limitations, the November, 1980, test failure is the first event of sex discrimination claimed by plaintiff, any earlier discrimination being time barred.

Plaintiff filed a grievance and defendant was directed to retest her. This test occurred on February 26, 1981. The test was administered by Warren Morris, one of defendant's truck drivers. It was the only such test that Morris had ever given. Morris testified that he "had some reservations as to whether or not [defendant] was receptive [to the prospect of women drivers]." Morris failed to check either "satisfactory" or "unsatisfactory" at the end of the road test form he utilized, saying he chose to "pass the buck."

Plaintiff was tested again in March of 1981. The

test was administered by Kenneth Bennett, defendant's Director of Safety. Plaintiff testified that, during the test, Bennett at length expressed surprise at plaintiff's desire to become a truck driver, since "it was no job for a woman" and "under no circumstances would he ever allow his wife to become a truck driver," and, further, expressed wonderment at what was wrong with plaintiff's husband "to allow [her] to even try to become a truck driver." Bennett classified plaintiff's test performance as unsatisfactory. Plaintiff then transferred from her driveaway job to being a yard worker.

In May, 1982, plaintiff responded to defendant's posting of openings for truck drivers. Plaintiff's request for a road test was denied, and the openings were filled by outside hires. Plaintiff tested one final time in June, 1984, again being told she had failed.

Meanwhile, on October 31, 1983, plaintiff filed the instant suit. As previously indicated, on November 20, 1986, the jury returned a verdict in favor of plaintiff, finding discrimination with respect to the last four road tests and the May, 1982, denial of the opportunity to take a road test.

On appeal, defendant first contends that the trial court erred in denying its motion for directed verdict. If the evidence, viewed in a light most favorable to the plaintiff, establishes a prima facie case, a defense motion for a directed verdict should be denied.[2]

The Civil Rights Act provides, in pertinent part:

(1) An employer shall not:
(a) Fail or refuse to hire, or recruit, or discharge,

---

[2] *Dixon v W W Grainger, Inc,* 168 Mich App 107, 110; 423 NW2d 580 (1987); see also *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389, 394; 362 NW2d 293 (1984), lv den 423 Mich 852 (1985).

or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.[3]

To make a prima facie case of sex discrimination, the plaintiff must show that he or she is a member of a class protected under the act and that, for the same or similar conduct, he or she was treated differently than a member of the opposite sex.[4] If the defendant employer asserts some legitimate nondiscriminatory reasons for the differing treatment, plaintiff must then show that the reasons asserted were a mere pretext for discrimination.[5]

Viewing the evidence in a light most favorable to plaintiff, a fact finder could reasonably infer that plaintiff was treated differently on account of her sex, and that defendant's proffered justification arising out of its attempt to institute prospective compliance with DOT regulations was a mere pretext for discrimination, or that defendant's determination that plaintiff was unqualified under the DOT regulations was, itself, discriminatory.

We do not view this conclusion as foreclosed by plaintiff's admission that she was not, at the time the tests were administered, able or ready to hit the open road in a fully loaded car hauler. The evidence presented revealed that, upon passing the test, defendant's employees would undergo in-house training in the operation of the car haulers. Several male truck drivers employed by defendant testified that, prior to such training, they were not

---

[3] MCL 37.2202; MSA 3.548(202).

[4] *Pomranky v Zack Co,* 159 Mich App 338, 343; 405 NW2d 881 (1987).

[5] *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 794; 369 NW2d 223 (1985).

qualified to operate the car haulers, but that post-test training taught them what they needed to know. Indeed, defense counsel conceded this fact in arguing defendant's motion for a directed verdict. The failure to train an employee to perform a particular job may itself form the basis for a civil rights claim where that failure constitutes disparate treatment.[6]

In denying defendant's motion for a directed verdict, the trial court stated as follows:

> Well, then, what you are saying is that if they were then violating, if they were violating [the DOT regulations] as to her and violating it as to the males, then I suppose a finder of fact could conclude that the reason they chose not to violate it in regard to Mrs. Brunson is because she was a woman and there would be at least a question of fact as to that. There has been sufficient evidence placed in this record that convinces this Court that there is at least a question of fact when that evidence is taken in the best possible light for the non-moving party or the Plaintiff that one of the determinative factors was Mrs. Brunson's sex.
>
> As to the prima facie case, . . . that's in a sense what they have to show regarding qualifications. But it appears to me that you are bootstrapping your case here. You are saying the reason she wasn't qualified was because we said she wasn't qualified. The reason she wasn't qualified is because she flunked the test. The Plaintiff's argument, of course, is she flunked the test not because she wasn't qualified but because of sexual discrimination. So it is a bootstrap issue. The act of discrimination that is complained of at least in four separate instances is the failing of the test based not upon proper qualifications but upon sexual

---

[6] See *Civil Rights Comm v Chrysler Corp*, 80 Mich App 368, 376; 263 NW2d 376 (1977) (interpreting the fair employment practices act, MCL 423.303; MSA 17.458(3), repealed by 1976 PA 453, effectively supplanted by the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

discrimination. No, there is enough in this record. I have to let it go to the jury. I would be remiss if I did not allow it to go to the jury.

We find no error in the denial of defendant's motion for a directed verdict.

Second, defendant contends that plaintiff's gender discrimination claim is preempted by the Federal Motor Carrier Safety Regulations governing qualification for interstate truck drivers.[7] Specifically, defendant argues that conflict preemption, as distinguished from field preemption, exists here.[8] Federal law may preempt state law to the extent that the state law actually conflicts with federal law, i.e., where compliance with both state and federal law is physically impossible or where

---

[7] 49 USC 3102 and 49 CFR 391.1 *et seq.*

[8] In *Dep't of Civil Rights ex rel Lanphar v A & C Carriers,* 157 Mich App 534, 538-539; 403 NW2d 586 (1987), this Court quoted *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd (After Remand),* 416 Mich 706, 713-714; 332 NW2d 134 (1982), rev'd on other grounds 467 US 461; 104 S Ct 2518; 81 L Ed 2d 399 (1984), wherein the Supreme Court discussed the two lines of analysis used to describe situations in which federal legislation has preempted state lawmaking on a subject in question, as follows:

"The first is so-called 'field pre-emption' in which any state legislation, harmonious or otherwise, is invalid if it seeks to regulate in any area in which Congress has intended to completely occupy the field. See *Rice v Santa Fe Elevator Corp,* 331 US 218; 67 S Ct 1146; 91 L Ed 1447 (1947).

"The second type of pre-emption is called 'conflict pre-emption' and exists in circumstances in which a state regulation is invalid under the supremacy clause, even though Congress has not fully foreclosed state legislation in a particular area, because the state regulation is held to be in conflict with the federal regulation. The two-prong test to determine if a conflict pre-emption exists was most clearly articulated in *Ray v Atlantic Richfield Co,* 435 US 151, 158; 98 S Ct 988; 55 L Ed 2d 179 (1978):

" 'A conflict will be found "where compliance with both federal and state regulations is a physical impossibility" . . . or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' "

the state law would thwart the purposes and objectives of the federal law.[9]

Defendant argues that it would be impossible for it to comply with both the DOT regulations and Michigan's Civil Rights Act, as construed by the jury below.[10] The DOT regulations require motor carriers to employ only "qualified" drivers.[11] Defendant argues that, since plaintiff was not qualified to operate a fully loaded car hauler, implementation of the Civil Rights Act would force defendant to employ an unqualified driver, contrary to the dictates of the DOT. However, we believe that defendant's argument overlooks the true basis for plaintiff's gender discrimination claim under the Civil Rights Act, namely, that defendant dished out disparate treatment in asserting plaintiff to be unqualified.

In *Dep't of Civil Rights ex rel Lanphar v A & C Carriers*,[12] we addressed the argument that DOT regulations concerning driver qualifications preempted the Michigan Handicappers' Civil Rights Act,[13] stating:

> [T]his is not a case of conflict preemption because compliance with the motor carriers safety regulations, 49 CFR 391.1 *et seq.,* and the handicappers' act is not a physical impossibility nor does the handicappers' act stand as an obstacle to the accomplishment and execution of the purpose and objective of the safety regulations. If an individual is not qualified under federal law to drive a motor carrier within interstate commerce, it cannot be a violation of the handicappers' act to

[9] *Michigan Canners & Freezers Ass'n,* n 8 *supra,* 467 US at 469.

[10] Federal *regulations* have no less preemptive effect than federal statutes. *Fidelity Federal Savings & Loan Ass'n v De la Cuesta,* 458 US 141, 153; 102 S Ct 3014; 73 L Ed 2d 664 (1982).

[11] 49 CFR 391.11(a).

[12] See n 8 *supra* at 539.

[13] MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*

refuse to employ the individual as an interstate motor carrier driver.

In the instant case, there is similarly no conflict preemption. Compliance with both the DOT regulations and the Civil Rights Act is not a physical impossibility, nor does the Civil Rights Act stand as an obstacle to the accomplishment and execution of the regulations' objectives and purposes. Plaintiff alleged and proved to the jury's satisfaction that the manner in which the driving tests were conducted and judged by defendant exhibited disparate and discriminatory treatment based upon plaintiff's gender. Defendant could have complied with both the DOT regulations and the Civil Rights Act simply by testing plaintiff in a fair and nondiscriminatory fashion. Accordingly, we find that plaintiff's claim is not preempted by the DOT regulations.

Next, defendant contends that the trial court abused its discretion in admitting evidence of certain events occurring prior to November, 1980, for which any claim by plaintiff was time barred. We disagree. The decision whether to admit certain evidence is within the trial court's sound discretion and will not be disturbed absent an abuse of discretion.[14] Evidence that the defendant engaged in a long-term campaign or pattern of harassment or discrimination may properly be considered.[15] Such evidence may constitute relevant background information illuminating later practices and, thus, revealing discriminatory motives.[16]

---

[14] *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988).

[15] *Jenkins,* n 5 *supra,* at 794-795; see also *Thomas v MESC,* 154 Mich App 736, 744; 398 NW2d 514 (1986).

[16] See *United Air Lines, Inc v Evans,* 431 US 553, 558; 97 S Ct 1885; 52 L Ed 2d 571 (1977); *Allen v Co of Montgomery, Alabama,* 788 F2d 1485, 1488 (CA 11, 1986). In discrimination cases, it is appropriate to

In the within case, evidence of events prior to November, 1980, showed a pattern of discrimination against women and formed an important and necessary background to subsequent events. Thus, such evidence was admissible. Further, the trial court instructed the jury that this evidence was allowed for the limited purpose of establishing an historical context and that any finding of discrimination must be based upon events on or after November, 1980. Finally, we reject defendant's claim that certain of the pre-November, 1980, evidence was irrelevant, inflammatory, or unfairly prejudicial.[17] There was no abuse of discretion in admitting this evidence.

Defendant contends that the jury's verdict was against the great weight of the evidence and that, therefore, the trial court erred in denying its motion for a new trial or judgment notwithstanding the verdict. The grant or denial of a motion for new trial is within the sound discretion of the trial court.[18] However, the jury's verdict should not be set aside where there is competent evidence to support it.[19] In deciding a motion for a judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party and the motion granted only when, as a matter of law, there is insufficient evidence to make an issue for the jury.[20] We find no abuse of discretion in denial of the motion by the trial

look to federal precedent for nonbinding guidance. *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986), reh den 428 Mich 1206 (1987).

[17] See *Weiss v Ford Motor Co,* 64 Mich App 519, 526-528; 236 NW2d 124 (1975).

[18] *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982), lv den 417 Mich 954 (1983).

[19] *Id.*

[20] *Murphy v Muskegon Co,* 162 Mich App 609, 616; 413 NW2d 73 (1987).

court. There was competent and sufficient evidence to support the jury's finding that defendant acted in a discriminatory fashion toward plaintiff. The verdict was not against the great weight of the evidence.

Defendant also argues that the jury's award of back pay was contrary to the great weight of the evidence since plaintiff was not qualified to drive a car hauler and, thus, sexual bias aside, could not have attained a truck driving position. However, plaintiff presented evidence indicating that, but for defendant's discriminatory behavior, she would have been "qualified." The jury verdict reflected that fact and was not contrary to the great weight of the evidence.

Next, defendant contends that the jury's award of $80,000 for emotional damages was excessive. We do not substitute our judgment for that of the jury unless the verdict was secured by improper methods, prejudice, or sympathy, or where it is so excessive as to shock the conscience. Further, where a verdict is within the range of the evidence produced at trial, it should not be reversed as excessive.[21] It is well established that victims of discrimination may recover for the humiliation, embarrassment, disappointment and other forms of mental anguish which result from the discrimination.[22] In the within case, plaintiff testified that she was very upset after the treatment she received on each road test, that her distress had put strains on her marriage, and that she was treated by her physician and received medication for her nerves. The evidence to support these results may be found in the long history and obvious pattern of

[21] *Harvey v Security Services, Inc,* 148 Mich App 260, 270; 384 NW2d 414 (1986), lv den 425 Mich 863 (1986).

[22] *Jenkins,* n 5 *supra,* at 799; *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188, 202; 390 NW2d 227 (1986).

gender discrimination practiced upon plaintiff by defendant. Under the circumstances of this case, medical testimony substantiating plaintiff's claim was not required.[23] We do not believe the jury's award was excessive in this case.

Finally, defendant claims that the award of prejudgment interest from the date plaintiff filed her complaint constituted a penalty which violates due process and equal protection. MCL 600.6013; MSA 27A.6013 is unambiguous and expressly provides for the assessment of interest from the date of filing the complaint.[24] Defendant's constitutional challenge to the statute is without merit.[25]

Affirmed.

[23] *Riethmiller,* n 22 *supra,* at 202.

[24] *Om-El Export Co, Inc v Newcor Inc,* 154 Mich App 471, 481; 398 NW2d 440 (1986).

[25] *Davis v Howard,* 14 Mich App 342, 344; 165 NW2d 505 (1968), lv den 382 Mich 754 (1969).