HOWARD v CANTEEN CORPORATION

Docket No. 120825. Submitted May 13, 1991, at Detroit. Decided
October 15, 1991; approved for publication January 15, 1992, at
9:00 A.M.

Carol J. Howard brought an action in the Wayne Circuit Court
against Canteen Corporation and David Spender, alleging
breach of an employment contract and sexual discrimination as
a result of the defendants' failure to promote her, harassment,
retaliation, and wrongful termination of her employment. The
jury returned a verdict for the plaintiff on the claims for
breach of contract and sex discrimination, and the court, Louis
F. Simmons, Jr., J., entered a judgment for $299,530 plus
interest, costs, and attorney fees. The defendants appealed from
the denial of their motions for directed verdict, judgment
notwithstanding the verdict, a new trial, and remittitur.

The Court of Appeals *held:*

1. There was sufficient evidence of sexual discrimination on
the basis of the failure to promote, sexual harassment, retalia-
tion, and wrongful discharge and of breach of contract to send
the case to the jury and to support its verdicts regarding those
claims. The trial court did not err in denying the defendants'
motions for directed verdict or judgment notwithstanding the
verdict.

2. The award of $200,000 for mental anguish, emotional
distress, and humiliation associated with the sex discrimination
claims was supported by the evidence and was not excessive.
The court did not abuse its discretion in denying the defen-
dants' motion for remittitur.

3. The court did not abuse its discretion in denying the
defendants' motion for a new trial.

4. A remand is necessary for an evidentiary hearing regard-
ing the reasonableness of the attorney fees awarded to the
plaintiff because the defendants were not provided a sufficient

REFERENCES

Am Jur 2d, Costs §§ 72, 79, 261; Damages §§ 143, 144, 678; Job
Discrimination § 2498.

Effect of anticipated inflation on damages for future losses—modern
cases. 21 ALR4th 21.

opportunity to challenge the affidavits and other documentary evidence in support of the requested fees and the trial court did not make findings of fact with regard to the attorney fee issue.

5. The use of a multiplier for the attorney fees granted under the Civil Rights Act was not justified under the circumstances of this case, and, therefore, the portion of the attorney fees awarded that are attributable to the multiplier is vacated.

6. The award of attorney fees under both the Civil Rights Act and MCR 2.403(O) was appropriate because each provision serves an independent policy or purpose. The court, on remand, must determine the reasonableness of the fees awarded as mediation sanctions.

7. The court erred in failing to reduce the award for damages for the plaintiff's future wage loss to present value or to instruct the jury to do so. Inflation is a factor that may be considered in assessing damages, but a court may not employ it to omit the present-value reduction. Remand is required for the court to reduce the future wage loss award to present value.

Affirmed in part, reversed in part, and remanded.

1. ATTORNEY AND CLIENT — ATTORNEY FEES.

Each party in a lawsuit ordinarily bears its own attorney fees unless there is express statutory authorization to the contrary.

2. CIVIL RIGHTS — ATTORNEY FEES — FINDINGS OF FACT.

A trial court, in its discretion, may award reasonable attorney fees in cases involving violations of the Civil Rights Act; the court, where attorney fees are to be awarded, must determine the reasonable amount of fees according to the nonexclusive list of factors and guidelines set forth in *Wood v DAIIE,* 413 Mich 573 (1982), and, while not required to detail its findings regarding each specific factor, it is required to make findings of fact with regard to the issue of attorney fees (MCL 37.2802; MSA 3.548[802]).

3. ATTORNEY AND CLIENT — ATTORNEY FEES — EVIDENTIARY HEAR-INGS.

The party seeking an award of attorney fees bears the burden of establishing entitlement and documenting the appropriate hours expended and hourly rates; where the opposing party challenges the reasonableness of the requested fee, the trial court should hold an evidentiary hearing regarding the issue, and, if any of the underlying facts are in dispute, the court should make findings of fact regarding those issues.

4. ATTORNEY AND CLIENT — ATTORNEY FEES.

A reasonable attorney fee is presumed to be based on a reason-

able hourly rate multiplied by a reasonable number of hours expended; a trial court's discretion to increase such a presumptively reasonable attorney fee is limited to rare circumstances where the attorney's work is so superior and outstanding that it far exceeds client expectations and normal levels of competence, or where it is necessary for attracting competent counsel.

5. CIVIL RIGHTS — ATTORNEY FEES — MEDIATION SANCTIONS.

Reasonable attorney fees may be awarded under both the court rule governing mediation sanctions and the attorney fee provision of the Civil Rights Act in an appropriate case because each provision serves an independent policy or purpose (MCR 2.403[O]; MCL 37.2802; MSA 3.548[802]).

6. DAMAGES — FUTURE LOSSES — PRESENT VALUE.

An award of damages for future losses must be reduced to its present cash value; a trial court faced with such an award either must instruct the jury regarding such reduction or reduce the award to its present value.

7. DAMAGES — FUTURE LOSSES — INFLATION.

Inflation is a factor that may be considered in assessing damages, but it does not entitle a trial court to ignore the duty to reduce to present value an award of damages for future losses.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Janet M. Tooley*), for the plaintiff.

*Clark, Klein & Beaumont* (by *P. Robert Brown, Jr., Dorothy M. Basmaji, Amy Bateson, Sheryl A. Moody,* and *Nancy J. Gordon*), for the defendants.

Before: CAVANAGH, P.J., and NEFF and W. R. BEASLEY,* JJ.

PER CURIAM. In this gender-based discrimination case, defendants appeal as of right from a judgment entered on a jury verdict of approximately $300,000. They also claim that the trial court erred in denying their posttrial motions for directed verdict, judgment notwithstanding the ver-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

dict, a new trial, and remittitur. We affirm in part and reverse in part.

Plaintiff, Carol Howard, began working at defendant Canteen's Cadillac 5 cafeteria as a shift supervisor in 1982. In September 1984, defendant David Spender was hired as manager of Cadillac 5. Plaintiff claims that Spender performed several acts and made several statements that constituted sexual harassment. Shortly before plaintiff left Canteen's employ, she had a meeting with Bernard Palko, manager of food services, and Spender regarding her complaints where Spender claimed that, rather than harassing, he was only complimenting plaintiff in the things he had said. Plaintiff believed that the two men were only trying to appease her and that she was not going to get anywhere with her complaint. Spender told plaintiff after the meeting that she would be terminated, removed, or reprimanded, and that he was going to make sure she was transferred out of Cadillac 5.

During plaintiff's last week of employment, Palko told her that she was being transferred to the Cadillac Main account, which was located in a dangerous neighborhood in Detroit and was a farther distance from her home. She protested the transfer, which was obviously undesirable for her, as being made only because Spender could not be controlled. She turned down the transfer because of the way it was handled, it would cause her financial hardship, she did not have reliable transportation to drive the farther distance, she would not be getting extra income, and her feelings regarding her safety. Palko told her that if she did not transfer, she would be considered terminated. Plaintiff did not return to work for Canteen.

In February 1986, plaintiff filed suit against defendants, alleging, among other things, breach

of contract and sexual discrimination as a result of defendants' failure to promote her, harassment, retaliation, and wrongful termination of her employment. These issues were thoroughly ventilated before the jury, and, after trial, the jury returned a verdict in plaintiff's favor on both the breach of contract and sex discrimination claims.[1] The trial court entered a judgment for $299,530, plus interest, costs, and attorney fees. Defendants filed motions for directed verdict, judgment notwithstanding the verdict, a new trial, and remittitur, which were denied. Defendants appeal.

First, defendants claim the trial court erred in denying their motions for directed verdict or judgment notwithstanding the verdict because there was insufficient evidence to send the case to the jury or to support the verdicts for sexual discrimination and breach of contract.

When deciding motions for directed verdict and judgment notwithstanding the verdict, the trial court must view the evidence in a light most favorable to the nonmoving party. Relief is required where insufficient evidence is presented to create an issue for the jury. Conversely, relief is not required where reasonable minds could differ on issues of fact. We will not disturb the trial court's decision unless there has been a clear abuse of discretion.[2]

To establish a prima facie case of sex discrimination, the plaintiff must show membership in a class protected under the Civil Rights Act[3] and

---

[1] Because the lost wages portion of the verdicts was duplicative under these two claims, the trial court awarded only the higher damages for breach of contract.

[2] *Michigan Microtech, Inc v Federated Publications, Inc,* 187 Mich App 178, 186-187; 466 NW2d 717 (1991); *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 792; 369 NW2d 223 (1985).

[3] MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

that, for the same or similar conduct, the plaintiff was treated differently than a member of the opposite sex. If the defendant employer asserts legitimate, nondiscriminatory reasons for its actions, the plaintiff must then show that the reasons asserted were a mere pretext for discrimination.[4]

With regard to plaintiff's claim of sexual discrimination regarding the failure to promote her to the Cadillac 5 manager position, for which she had requested consideration, defendants argue that plaintiff did not present sufficient evidence to support her claim because Spender was more qualified for the position than she was. However, plaintiff presented evidence that she had supervisory experience before coming to work for Canteen in 1982, she had filled in for the manager at another location on numerous occasions, she had managed both shifts of the Cadillac 5 cafeteria for a few weeks before Spender was hired, and she had generally fulfilled all the job duties of a manager at some point in time. Additionally, she was told by Palko to try to assist and guide a previous manager because she had more experience. Viewing this and the other evidence of discrimination in a light most favorable to plaintiff, a jury question was raised regarding whether plaintiff had shown, by a preponderance of the evidence, that she applied for an available position for which she was qualified but was rejected under circumstances giving rise to an inference of unlawful conduct and that sex discrimination played a significant role in the decision to deny plaintiff the promotion.[5]

---

[4] *Brunson v E & L Transport Co,* 177 Mich App 95, 100; 441 NW2d 48 (1989); *Pomranky v Zack Co,* 159 Mich App 338, 343; 405 NW2d 881 (1987).

[5] *Pomranky, supra,* p 344.

With regard to plaintiff's claim of sexual harassment, defendants argue that plaintiff did not present sufficient evidence to establish either quid pro quo sexual harassment or sexual harassment that results from a hostile or offensive work environment.[6] However, the jury heard testimony that Spender would inquire into plaintiff's personal life, asking why she was divorced and how she could get a younger man like Michael Hobson, her live-in boyfriend who also worked on her shift at Cadillac 5; that Spender asked if plaintiff paid Hobson for his sexual favors, how she could keep up with a younger man, and why she was not more sociable with a man of Spender's age; and that Spender also told plaintiff that if it were not for Hobson, he and plaintiff would be "closer" and they would have a better "working relationship."

Additionally, the jury heard testimony that Spender would open, read, and throw away plaintiff's mail, would go through her purse, and had grabbed a personal check out of her hand, and that he told plaintiff that women should not work out in public, that she was too aggressive, and that she was wasting her time because the company did not promote women to upper management positions, but rather would stick them in lower management positions just to keep various women's groups happy. The jury also heard testimony that Spender told plaintiff she was not going to go anywhere unless she cooperated and that Spender was responsible for food shortage problems that occurred two or three times a week. This evidence, if accepted by the jury, was sufficient to show, at least, sexual harassment resulting from a hostile or offensive work environment.[7]

Regarding plaintiff's claim of sexual discrimina-

---

[6] *McCalla v Ellis,* 180 Mich App 372, 377; 446 NW2d 904 (1989).

[7] See *id.*; MCL 37.2103(h)(iii); MSA 3.548(103)(h)(iii).

tion concerning retaliation, defendants argue that there was nothing of an actionable nature to retaliate against, that there was no evidence of retaliation, and that plaintiff's claim of retaliation based on her transfer to Cadillac Main was pure speculation. However, plaintiff testified that, after the meeting between Palko, Spender, and herself, Spender told her she would be terminated, removed, or reprimanded and that Spender would make sure plaintiff was moved out of his account. Soon afterward, plaintiff was told she must transfer to what was for her a much less desirable situation. Further, when plaintiff refused to transfer, Canteen hired a person "off the street" to fill the position, which tends to render quite unbelievable defendants' claim that this was a promotion or growing experience for plaintiff. Viewing this evidence in a light most favorable to plaintiff, there was ample evidence for the jury to reasonably find that the elements of plaintiff's retaliation claim were proved.[8]

With regard to plaintiff's claim of sexual discrimination concerning her discharge, there was sufficient evidence to support the jury's findings. Plaintiff was terminated immediately after she refused the transfer to Cadillac Main. She presented evidence that, in the context of this case, working conditions there were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign and that such action was a reasonably foreseeable consequence of Canteen's conduct. As indicated, there was evidence that plaintiff's employment situation had been made intolerable by discrimination and sexual harassment and that her employment situa-

---

[8] *Polk v Yellow Freight System, Inc,* 876 F2d 527, 531 (CA 6, 1989).

tion was further aggravated by a transfer to an undesirable location.[9]

Defendants also argue that there was insufficient evidence to support plaintiff's claim of breach of contract. However, plaintiff testified that Palko had told plaintiff that as long as she was familiar with the company's policies, followed those policies, and did her job well, she would have a future with Canteen. Such verbal statements can give rise to a contract that an employee will be discharged only for just cause.[10] In addition, Palko testified that it was Canteen's policy not to terminate employees without a fair reason or just cause. Thus, plaintiff presented sufficient evidence to support her claim for breach of contract.

Viewing all the evidence in a light most favorable to plaintiff, we do not find that the trial court abused its discretion in denying defendants' motions for directed verdict and judgment notwithstanding the verdict.

Second, defendants claim that the evidence was insufficient to support the $200,000 damage award for mental anguish, emotional distress, and humiliation with regard to the discrimination count, and they contend that the trial court erred in denying their motion for remittitur.

Victims of discrimination may recover for the humiliation, embarrassment, disappointment, and other forms of mental anguish resulting from the discrimination, and medical testimony substantiating the claim is not required. When a verdict is within the range of the evidence produced at trial,

[9] See *Fischhaber v General Motors Corp*, 174 Mich App 450, 454-455; 436 NW2d 386 (1988); *Jenkins, supra,* p 796; *McCalla, supra,* p 378.

[10] See *Wilson v General Motors Corp*, 183 Mich App 21, 37; 454 NW2d 405 (1990).

it should not be reversed as excessive.[11] With regard to remittitur, the only consideration expressly authorized by the remittitur court rule, MCR 2.611(E)(1), is whether the award is supported by the evidence. However, other objective factors such as whether the verdict was induced by bias or prejudice relating to the actual conduct of the trial or to the evidence adduced may be considered.[12]

The testimony indicated that defendants' actions left plaintiff sad and depressed and that she is still dealing with her problems today. She is behind in paying her bills and suffers from a medical problem that she believes stems from her work situation. The evidence to support these results is found in the harassment and discrimination inflicted upon her for a lengthy period of time, despite her complaints to Palko.[13] Under these circumstances, we do not believe the award was excessive, nor do we believe, giving deference to the trial court that personally observed the witnesses and heard the testimony, that the trial court abused its discretion in denying defendants' motion for remittitur.[14]

Third, defendants claim that the trial court abused its discretion in denying their motion for a new trial because of numerous errors or irregularities in the trial proceedings. We have reviewed each of defendants' alleged errors and do not find that the trial court abused its discretion so as to justify a new trial.

Fourth, defendants claim that the trial court erred in its award of attorney fees. They contend that the attorney fees requested and granted were

[11] *Brunson, supra,* pp 106-107.

[12] *Palenkas v Beaumont Hosp,* 432 Mich 527, 532; 443 NW2d 354 (1989).

[13] See *Brunson, supra.*

[14] *Palenkas, supra,* pp 531, 533, 534.

unreasonable, that the use of a multiplier for the fees granted under the Civil Rights Act was not justified, and that an additional award of attorney fees as a mediation sanction constituted double-dipping.

The "American Rule" provides that each party in a lawsuit ordinarily bears its own attorney fees unless there is express statutory authorization to the contrary.[15] MCL 37.2802; MSA 3.548(802) provides the authority to award reasonable attorney fees in state civil rights cases.[16] The decision to grant or deny attorney fees under the Civil Rights Act is discretionary with the trial court.[17] Where attorney fees are to be awarded, the court must determine the reasonable amount of fees according to the nonexclusive list of factors and guidelines set forth in *Wood v DAIIE*.[18] While the court is not required to detail its findings regarding each specific factor,[19] it is required to make findings of fact with regard to the attorney fee issue.[20]

The most useful starting point for determining the amount of a reasonable attorney fee is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. The party seeking the fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[21] In plaintiff's brief in support of her motion for attor-

[15] *Hensley v Eckerhart,* 461 US 424, 429; 103 S Ct 1933; 76 L Ed 2d 40 (1983).

[16] For a similar federal rule, see the Civil Rights Attorney's Fees Awards Act, 42 USC 1988.

[17] *Jenkins, supra,* pp 800-801; MCL 37.2802; MSA 3.548(802).

[18] 413 Mich 573, 588; 321 NW2d 653 (1982). *Wilson, supra,* p 43.

[19] *Maple Hill Apartment Co v Stine (On Remand),* 147 Mich App 687, 692-693; 382 NW2d 849 (1985).

[20] *Petterman v Haverhill Farms, Inc,* 125 Mich App 30, 32; 335 NW2d 710 (1983).

[21] *Hensley, supra,* pp 433, 437. See also *Petterman, supra,* p 33.

ney fees submitted to the trial court, plaintiff's attorney claims that she does not keep contemporaneous time records. She stated:

> It may be noted that Plaintiff's firm does not ordinarily keep contemporaneous billing records, as we are strictly a plaintiff's law firm and rarely bill clients.

While such records are not required to be kept, in demanding a large sum of attorney fees the lack of contemporaneous time records leaves room for doubt regarding the reasonableness of the hours expended. Where the opposing party challenges the reasonableness of the requested fee, the trial court should hold an evidentiary hearing regarding the issue.[22] If any of the underlying facts, such as the number of hours spent in preparation, are in dispute, the trial court should make findings of fact regarding the disputed issues.[23]

In this case, no evidentiary hearing was held regarding the reasonableness of the attorney fee. Rather, plaintiff's counsel submitted affidavits and other documentary evidence in support of her requested fees, and oral arguments were heard. The trial court, in ruling on the issue, stated:

> [T]he Court is satisfied that both Attorneys are very competent and, as a matter of fact, did a splendid job in this matter. The Court compliments both Attorneys, and the Court is going to grant Plaintiff's application for attorney fees and costs.
>
> *Mr. Brown [defense attorney]:* In what amount, Your Honor?
>
> *The Court:* Total.
>
> *Ms. Tooley [plaintiff's attorney]:* Thank you, Your Honor.

---

[22] *Wilson, supra.*

[23] *Stine, supra.*

*The Court:* Thank you.
*Mr. Brown:* Total as . . .
*The Court:* As prayed, yes.

We do not believe that the hearing held was sufficient to give defendants the opportunity to challenge specific hours or rates, nor were the court's "findings" sufficient to satisfy the *Stine* and *Petterman* requirement that the trial court must make findings of fact with regard to the attorney fee issue. Therefore, we remand for an evidentiary hearing regarding the issue. Plaintiff's counsel is entitled to testify and present any other evidence regarding the reasonableness of her requested fees, and defendants are free to challenge that evidence. The trial court must give consideration to the *Wood v DAIIE* factors, make a finding regarding the actual time spent on the case, and determine a reasonable attorney fee.

In addition to the "lodestar" (reasonable hourly rate times reasonable hours expended), which is presumed to be the reasonable attorney fee,[24] plaintiff requested and received a one hundred percent multiplier, which doubled the attorney fee award for the civil rights claims. The court's discretion to adjust the lodestar upward is limited, though it can be adjusted for quality of representation in those rare circumstances when the attorney's work is so superior and outstanding that it far exceeds client expectations and normal levels of competence and in rare cases or extraordinary circumstances when it is necessary for attracting competent counsel.[25] In this case, plaintiff's counsel obtained a $300,000 jury verdict, which was far greater than the $60,000 mediation award. She

---

[24] *Rode v Dellarciprete,* 892 F2d 1177, 1183 (CA 3, 1990).

[25] *Id.,* p 1184; *Knop v Johnson,* 712 F Supp 571, 584 (WD Mich, 1989). See also *Wilson, supra.*

claimed difficulty in the case because defendants introduced hearsay exhibits and did not submit a witness list until the first day of trial. Initially the lower court ruled that the defendants would not be allowed to call any witnesses from the list, however, after the plaintiff had presented her proofs, the Court of Appeals overturned the lower court's ruling and ordered that defendants were allowed to call witnesses from that list. Plaintiff did not submit any evidence regarding difficulty in obtaining competent counsel for this type of case in the absence of a multiplier.

Although plaintiff's counsel obtained excellent results, we do not view the circumstances of this case as extraordinary or rare. Further, a one hundred percent multiplier is unjustified. In *Knop v Johnson*,[26] the court awarded only a thirty percent multiplier where the counsel for the plaintiff class had shown that a multiplier was necessary for the class to obtain competent counsel, the defense counsel was guilty of grievous misconduct throughout the litigation, the litigation was inherently difficult in that the individual plaintiffs were prisoners in four separate, remote institutions, and the counsel for the plaintiff class obtained exceptional success for the clients. Consequently, we vacate that portion of attorney fees attributable to the multiplier.

The final complaint defendants have with the attorney fee award is that the trial court awarded fees under both the Civil Rights Act and the mediation court rule,[27] resulting in counsel being compensated under both provisions for some of her time. However, in some situations where each provision serves an independent policy and pur-

[26] *Supra.*
[27] MCR 2.403(O).

pose, recovery under both may be appropriate.[28] The policy behind the mediation sanction rule is to place the burden of litigation costs upon the party who insists upon trial by rejecting a proposed mediation award.[29] The purpose of the civil rights attorney fee provision is to encourage persons deprived of their civil rights to seek legal redress, to ensure victims of employment discrimination access to the courts, and to obtain compliance with the act and thereby deter discrimination in the work force.[30] Therefore, because each provision serves an independent policy or purpose, the award of attorney fees under both was appropriate. However, we note that, on remand, the trial court must determine the reasonableness of the fees awarded as mediation sanctions.

Finally, defendants claim that the trial court erred in refusing to reduce the award of damages for plaintiff's future wage loss to present value or to instruct the jury to do so.[31] Plaintiff argues that the award should not be reduced to present value because defendants did not request this instruction until after closing arguments and plaintiff did not have a chance to argue for prejudgment interest or regarding the effect of inflation.

Even in the absence of a request, a trial court is required to instruct a jury on the reduction of an award for future damages to present value or to reduce the award to value itself.[32] Inflation is a factor that may be considered in assessing damages, but a court may not employ it to omit

[28] See *Dep't of Transportation v Dyl,* 177 Mich App 33, 37-39; 441 NW2d 18 (1989); *Kondratek v Auto Club Ins Ass'n,* 163 Mich App 634, 638-639; 414 NW2d 903 (1987).

[29] *Id.,* p 639.

[30] *Jenkins, supra,* p 801. See also *Yuhase v Macomb Co,* 176 Mich App 9, 13; 439 NW2d 267 (1989).

[31] SJI2d 53.03.

[32] *Goins v Ford Motor Co,* 131 Mich App 185, 201; 347 NW2d 184 (1983).

the present-value reduction.[33] Therefore, we remand to the trial court for it to reduce to present value the $43,200 award for future wage loss.

Affirmed in part, reversed in part, and remanded for computation of the present value of the award for lost future wages and for an evidentiary hearing regarding the reasonableness of attorney fees, consistent with this opinion. We do not retain jurisdiction.

---

[33] *McKee v Dep't of Transportation,* 132 Mich App 714, 729; 349 NW2d 798 (1984). See also SJI2d 53.06.