## POMRANKY v ZACK COMPANY

Docket No. 84465. Submitted February 4, 1987, at Lansing. Decided April 20, 1987.

Susan Pomranky brought an action in the Midland Circuit Court against her former employer, Zack Company, alleging sex discrimination in violation of the Civil Rights Act and two counts of breach of contract. Defendant moved for involuntary dismissal at the close of plaintiff's proofs in a bench trial. The trial court, Paul J. Clulo, J., concluded that there was not sufficient evidence of sex discrimination, found for defendant on all counts and granted a judgment for the defendant. Plaintiff appeals therefrom, raising as error only the trial court's decision on the discrimination claim.

The Court of Appeals *held:*

1. The trial court's findings of fact were supported by the evidence and were not clearly erroneous. The court erred, however, in its legal conclusion that plaintiff had not proven sex discrimination in violation of the Civil Rights Act.

2. Plaintiff did carry her burden of proof in regard to the discrimination charges.

Reversed in part and remanded.

1. CIVIL RIGHTS — SEX DISCRIMINATION — PRIMA FACIE CASE.

A woman, to establish a prima facie case of sex discrimination, must show that she is a member of a class protected under the Civil Rights Act, and that, for the same or similar conduct, she was treated differently than a man.

2. CIVIL RIGHTS — SEX DISCRIMINATION — BURDEN OF PROOF.

The burden of proof shifts to the defendant employer to articulate

REFERENCES

Am Jur 2d, Civil Rights §§ 154-192.

Validity, under equal protection clause of Fourteenth Amendment, of gender-based classifications arising by operation of state law—federal cases. 60 L Ed 2d 1188.

Application of state law to sex discrimination in employment. 87 ALR3d 93.

See also the annotations in the Index to Annotations under Sex Discrimination.

a legitimate, nondiscriminatory reason for its actions after a plaintiff has established a prima facie case of sex discrimination by a preponderance of the evidence; if the defendant carries this burden, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons for rejecting the plaintiff, but were merely a pretext for discrimination, by persuading the trier of fact that a discriminatory reason more likely motivated the defendant or by showing that the proffered reason is not worthy of credence.

3. CIVIL RIGHTS — SEX DISCRIMINATION — PRIMA FACIE CASE.

An initial prima facie case of sex discrimination is established when a plaintiff proves by a preponderance of the evidence that she applied for an available position for which she was qualified but was rejected under circumstances giving rise to an inference of unlawful discrimination; while plaintiff must show by a preponderance of the evidence that she was denied the position because of gender, she need not show that gender was the exclusive factor; the plaintiff may recover if sex discrimination played a significant role in the decision to deny her the position, notwithstanding the presence of other, lawful considerations that also may have contributed to the decision.

*Mary E. Gerisch,* for plaintiff.

*Borrello, Thomas & Jensen, P.C.* (by *Leopold P. Borrello* and *Jill K. Smith*), for defendant.

Before: BEASLEY, P.J., and CYNAR and R. C. ANDERSON,* JJ.

PER CURIAM. Plaintiff Susan Pomranky filed this suit in Midland Circuit Court alleging sex discrimination in violation of the Civil Rights Act, MCL 37.2202; MSA 3.548(202), and two counts of breach of contract. A bench trial was held April 1, 1985. At the close of plaintiff's proofs, defendant moved for involuntary dismissal pursuant to MCR 2.504(B)(2). The trial court found for defendant on all counts. Plaintiff appeals as of right, raising as

* Circuit judge, sitting on the Court of Appeals by assignment.

error only the trial court's decision on the discrimination claim.

Plaintiff was hired by defendant as a billing clerk in the fall of 1979. Defendant is a subcontractor to Bechtel Company, the principal contractor in the construction of a nuclear electric generating plant in Midland. Plaintiff requested, and was granted, a ninety-day maternity leave to begin in May, 1980. Two women were hired to do the secretarial and payroll work, and plaintiff trained them before she left. A day or so before her leave she asked her supervisor, Russell McCarley, whether the women were permanent employees. McCarley said they were, but assured her that there would be a job for her when she returned. He told her she would have other duties, including supervising the other secretaries and office manager duties. According to plaintiff, McCarley told her that the pay for an office manager was $8.50 per hour.

Plaintiff returned two months early from her maternity leave and spoke with McCarley regarding the office manager job. McCarley told her that the office was under a stop-work order and that no promotions could be given at that time. After her return, plaintiff supervised the other two secretaries and her duties changed, although her title did not. According to plaintiff, McCarley never mentioned any special qualifications or requirements for the office manager's position.

Later that summer, Joseph Sheehan came to the office and interviewed with McCarley. McCarley told plaintiff that Sheehan was interested in a billing clerk job. McCarley gave her a letter to type which submitted Sheehan's name to Bechtel for the billing clerk job; Bechtel had to approve hiring decisions. Later McCarley gave the letter to

another secretary to change the offer to office manager.

When plaintiff saw the revised letter, she was upset and asked McCarley which position Sheehan would have. McCarley told her that Sheehan would be office manager. Plaintiff asked why Sheehan was hired instead of her, and McCarley said it was felt that the job needed "the firm hand of a man" so there would not be any pettiness or bickering in the office. He also indicated that plaintiff would train Sheehan for the position. The conversation grew heated and McCarley told plaintiff that if she did not like it she could go; plaintiff understood McCarley to mean she was fired.

McCarley's memory of the events was "fuzzy." He did not remember any conversation with plaintiff about becoming an officer manager. McCarley testified that he had interviewed Sheehan for the manager position, not a billing clerk position, and he did not remember the letter which proposed Sheehan for a billing clerk position, even after the letter was admitted into evidence. He did not remember telling plaintiff that he hired Sheehan because he needed a man for the job; he stated that he hired Sheehan because of his accounting background. McCarley testified that he did not look into plaintiff's qualifications for the job and did not know whether she had any accounting experience. He never compared plaintiff's and Sheehan's qualifications before hiring Sheehan.

Ralph Usinger, McCarley's assistant, testified at trial that plaintiff was a good employee and that he and McCarley had discussed plaintiff as a candidate for the officer manager position because she was effectively doing that job already. McCarley never indicated to Usinger that plaintiff was not qualified for the job, nor did McCarley mention any particular requirements.

At the close of plaintiff's proofs, defendant moved for involuntary dismissal pursuant to MCR 2.504(B)(2). That court rule allows the judge, in an action tried without a jury, to determine the facts and render a judgment against the plaintiff after the presentation of plaintiff's proofs. The judgment must include findings of fact and conclusions of law and is considered a judgment on the merits.

In the instant case the trial judge concluded that the facts were not seriously in dispute. He found plaintiff did have conversations with McCarley about the office manager position. He accepted plaintiff's testimony regarding the preparation of the letters about Sheehan and he found that McCarley did make a statement to the effect that the office needed the "firm hand of a man" to control pettiness and bickering. Turning to his conclusions of law, the trial judge found that McCarley's statement was evidence of discrimination, but also that it was not sufficient evidence, and he found for defendant.

On appeal plaintiff claims that the trial court erred in concluding that she had not proven sex discrimination in violation of the Civil Rights Act. We agree.

The findings of fact made by the trial judge were supported by the evidence and were not clearly erroneous. We disagree, however, with the court's legal conclusions.

The Civil Rights Act provides in pertinent part:

(1) An employer shall not:
(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202; MSA 3.548(202).]

The act defines "employer" for purposes of the act as "a person who has 1 or more employees, and includes an agent of that person." MCL 37.2201(a); MSA 3.548(201)(a).

To establish a prima facie case of sex discrimination, a woman must show that she is a member of a class protected under the statute, and that, for the same or similar conduct, she was treated differently than a man. *Slayton v Michigan Host, Inc,* 144 Mich App 535, 541; 376 NW2d 664 (1985); *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 793; 369 NW2d 223 (1985). After a plaintiff has established a prima facie case by a preponderance of the evidence, the burden of proof shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions. *Slayton, p supra,* 541; *Jenkins, supra,* p 793. If the defendant carries this burden, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons for rejecting the plaintiff, but were merely a pretext for discrimination. *Slayton, supra,* pp 541-542; *Clark v Uniroyal Corp,* 119 Mich App 820, 825; 327 NW2d 372 (1982):

> A plaintiff may succeed in establishing that the defendant's proffered reason was a pretext—that is, establishing that he was actually the victim of intentional discrimination—either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or, indirectly, by showing that the proffered reason is not worthy of credence.

In the instant case plaintiff did carry her burden. "An initial prima facie case of discrimination is established when the plaintiff proves by a preponderance of the evidence that [s]he applied for

an available position for which [s]he was qualified but was rejected under circumstances giving rise to an inference of unlawful discrimination." *Clark, supra,* pp 824-825; *Anspach v Livonia,* 140 Mich App 403, 407; 364 NW2d 336 (1985). Plaintiff is a member of a protected class under the Civil Rights Act and she testified that she requested the same job offered to Sheehan. Plaintiff also offered proof that she was told she was not given the job because she was female. Plaintiff offered evidence that the hiring agent of defendant employer said that she was not hired because the job needed the "firm hand of a man" to control pettiness and bickering in the office.

While plaintiff must show by a preponderance of the evidence that she was denied the promotion because of gender, she need not show that gender was the exclusive factor. *Jenkins, supra,* p 794. "Discrimination, whether based on race, religion, sex, or age, cannot be tolerated in a free society regardless of whether the objective sought thereby could be partially justified for other, legitimate reasons." *Gallaway v Chrysler Corp,* 105 Mich App 1, 6; 306 NW2d 368 (1981), lv den 413 Mich 853 (1982). Plaintiff may recover if sex discrimination played a significant role in the decision to deny plaintiff the promotion, notwithstanding the presence of other, lawful considerations that also may have contributed to the decision. *Gallaway, supra,* p 6.

Accepting the trial court's findings of fact, and after a review of the applicable law, we find that the trial court's conclusions of law were erroneous. We reverse the trial court's grant of involuntary dismissal on plaintiff's discrimination count and remand for further proceedings.

Reversed in part and remanded.