Gentry P. TRANSOU, Plaintiff,

v.

ELECTRONIC DATA SYSTEMS, Defendant.

Civ. A. No. 90–70316.

United States District Court, E.D. Michigan, S.D.

June 27, 1991.

James C. Barnes, Jr., Barnes & Barnes, Southfield, Mich., for plaintiff.

Bruce S. Friedman, Southfield, Mich., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SANCTIONS, DENYING PLAINTIFF'S MOTION FOR SANCTIONS, AND DISMISSING PLAINTIFF'S MOTIONS IN LIMINE AS MOOT

GADOLA, District Judge.

Plaintiff Gentry P. Transou filed his complaint against defendant Electronic Data Systems ("EDS") February 6, 1990, seeking damages and other relief for incidents arising out of plaintiff's employment with defendant and plaintiff's subsequent separation from the defendant corporation. Plaintiff's complaint alleged the following counts: 1) breach of implied employment contract, 2) breach of written employment contract, 3) race discrimination, 4) age discrimination, and 5) negligent evaluation. Plaintiff's claim for negligent evaluation has previously been dismissed by the court.

Defendant filed a motion for summary judgment as to the remaining four counts of the complaint April 24, 1991. Plaintiff filed its response May 10, 1991; and defendant filed a reply May 17, 1991. Plaintiff filed a motion for partial summary judgment as to liability on count three April 24, 1991. Defendant filed its response May 10, 1991, along with a motion for sanctions against plaintiff's counsel for bringing the motion for partial summary judgment. Plaintiff filed a response May 29, 1991, to defendant's motion for sanctions. Plaintiff filed his motion in limine to strike and for costs May 7, 1991, to which defendant re-

sponded May 15, 1991. Subsequently, plaintiff filed a reply May 20, 1991, along with a motion for sanctions against defendant's counsel. Defendant failed to respond to plaintiff's motion for sanctions. Plaintiff then filed a second, third, fourth, fifth, sixth and seventh motion in limine May 30, 1991.

Oral argument on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment was heard June 20, 1991. The court will consider all of the aforementioned motions in this memorandum opinion and order.

## BACKGROUND FACTS

Plaintiff Gentry P. Transou began employment with General Motors Corporation ("GM") in 1962. Throughout most of his employment with the company, plaintiff held various jobs in the Management Information Services Division and was a computer operator. Plaintiff became an EDS employee January 1, 1985, as a result of the transition of GM's MIS employees to EDS employment.

As an EDS employee, plaintiff participated in a Stock Incentive Plan ("SIP"), which provided plaintiff an opportunity to invest in EDS stock over a ten year period. In conjunction with his participation, plaintiff executed a plan document which set forth the SIP's terms and conditions. At deposition plaintiff admitted to receiving, reviewing and understanding the SIP prospectus, which stated, in part:

> 12. **No Effect on Employment.** Nothing herein contained, including the sale or award of any shares and the grant of any rights or options, shall affect the right of the Company [EDS] to terminate any participant's employment at any time for any reason.

Transou deposition pp. 39–40; Transou deposition, exhibit 2.

Following plaintiff's transition to EDS, he held various jobs in several different EDS organizations. In May 1988 he transferred to EDS' account at GM's Lake Orion assembly plant as a computer operator. There, plaintiff was responsible for running production schedules and other systems. Defendant claims that although plaintiff would perform satisfactorily for periods of time, his work would then slip substantially below acceptable levels. Defendant asserts that it made plaintiff aware of his deficiencies through formal discussions between plaintiff and members of the company's management staff.

Defendant claims that plaintiff's unacceptable performance typically involved repeatedly making similar errors. In late October 1989, defendant determined that plaintiff was in a period of sub-par performance. Donald O'Shea, EDS account manager at Lake Orion, and David Evenson, plaintiff's supervisor, met with plaintiff to discuss plaintiff's inconsistent performance and to place him on a Performance Improvement Plan ("PIP"). The PIP specified the prior discussions between plaintiff and his managers regarding his performance and enumerated plaintiff's errors.

The PIP further provided that plaintiff would have to perform satisfactorily for thirty days following the start date of the plan, November 3, 1989, and would have to "sustain" his performance or "disciplinary action to include separation [would] occur." Transou deposition, exhibit 3. The PIP included the following language: "In addition, each of the items were [sic] specified without a time frame. This is to indicate that your performance needs to improve to these levels and *consistently be maintained.*" *Id.,* p. 2 (emphasis added). After his discussion of the PIP with the managers, plaintiff refused to sign the PIP.

There is no dispute that plaintiff's performance for the next few weeks was satisfactory. Defendant claims, though, that plaintiff's performance began to slip in early January 1990. On January 17, 1990, O'Shea, on behalf of the defendant EDS, terminated plaintiff's employment.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

### I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Count I: Breach of Implied Employment Contract

Count I of the complaint alleges that defendant EDS' actions toward plaintiff created an implied just cause employment contract and that as a result of that contract, plaintiff's employment with defendant could be terminated only upon defendant's showing of just cause rather than for any reason or for no reason.

■ Under Michigan law, employment is presumed to be terminable at will. *Valentine v. General American Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628 (1984); *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937). However, in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980) the Michigan Supreme Court held that "an employer's express agreement to terminate only for cause, or statements of company policy to that effect, can give rise to rights enforceable in contract." *Id.* 408 Mich. at 610, 292 N.W.2d 880. The court indicated that a "just cause" limitation on discharge

could be implied either by express agreement or as a result of an employee's legitimate expectations grounded in an employer's policy statements. *Id.* at 598, 292 N.W.2d 880.

Courts interpreting the landmark case continually have recognized, however, that *Toussaint* did not create any fundamental right to employment. *Valentine,* 420 Mich. at 258, 362 N.W.2d 628; *Clifford v. Cactus Drilling Corp.,* 419 Mich. 356, 353 N.W.2d 469 (1984). The Court of Appeals for the Sixth Circuit noted that under Michigan law, "[e]mployers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason." (citation and footnote omitted). *Vollrath v. Georgia–Pacific Corp.,* 899 F.2d 533, 535 (6th Cir.1990).

■ In determining implied contract claims brought under *Toussaint,* courts consistently have recognized that a just cause limitation on an employer's right to discharge does not arise absent representations which objectively create a legitimate expectation that the at-will relationship has been modified. *See, e.g., Elsey v. Burger King,* 917 F.2d 256, 260 (6th Cir.1990); *Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1234 (6th Cir.1988); *Boynton v. TRW, Inc.,* 858 F.2d 1178, 1185 (6th Cir. 1988) (en banc). Moreover, the representations relied upon by the employee must be sufficiently specific to support such an objective expectation. *Id.; see also Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986); *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933, 936 (E.D.Mich. 1987). A mere subjective expectation of dismissal only for cause is insufficient as a matter of law to alter the at-will employment relationship. *Id.*[1]

■ Plaintiff admits that defendant did not make any express representations that plaintiff's employment would be terminated only for just cause. Transou deposition, p. 76. In support of his implied contract claim, plaintiff asserts a legitimate expectation of just cause termination. Plaintiff relies upon allegations that he was told periodically to "keep up the good work," or words to that effect, by the management; that plaintiff's supervisor once told his employees that he rewarded good performance; and that plaintiff once received two tickets to a Detroit Pistons basketball game as employee recognition.

■ Michigan courts consistently have ruled that general statements made by an employer expressing optimism and a bright future with the company are insufficient to establish a just cause employment contract. *See, e.g., Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 308 N.W.2d 459 (1981) (Court affirms summary judgment where plaintiff based *Toussaint* claim upon management representations regarding his bright future and "feeling" that competent performance established job security); *Dzierwa v. Michigan Oil Co.,* 152 Mich.App. 281, 393 N.W.2d 610 (1988) (general optimistic statements concerning plaintiff's future at company insufficient to create a just cause relationship where termination policy was never discussed); *Grow v. General Products, Inc.,* 184 Mich.App. 379, 457 N.W.2d 167, 169 (1990). Even in cases in which an employee was told directly that he would not lose his job as long as he performed adequately, courts uniformly have held such representations insufficient to establish a viable *Toussaint* claim. *See Vollrath,* 899 F.2d 533, 535 (6th Cir.1990); *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933 (E.D.Mich.1987). In light of these decisions, plaintiff's evidence in the instant case, based on what plaintiff had been told by management, is insufficient to establish a *Toussaint* claim.

Plaintiff further relies on the representations expressed in two EDS publications. In the first of these, plaintiff claims that a

---

1. *See also Grow v. General Products, Inc.,* 184 Mich.App. 379, 457 N.W.2d 167 (1990); *Feaheny v. Caldwell,* 175 Mich.App. 291, 437 N.W.2d 358 (1989); *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 308 N.W.2d 459 (1981), *leave* denied, 414 Mich. 870 (1982); *Dzierwa v. Michigan Oil Co.,* 152 Mich.App. 281, 393 N.W.2d 610 (1988); *Vollrath,* 899 F.2d at 535; *Dell v. Montgomery Ward and Co.,* 811 F.2d 970, 974 (6th Cir.1987).

management booklet states, "During your performance appraisal, you and your manager discuss your strengths and areas where improvement can be made, and develop objectives to continually improve your performance." Plaintiff's response brief, p. 10. Plaintiff claims that his May 18, 1989 performance appraisal contained comments inconsistent with the reasons defendant gave for terminating plaintiff's employment. Plaintiff thereby concludes that defendant ran afoul of its own policies for termination.

Plaintiff further contends that a second EDS publication outlines six procedural steps that must be followed in counseling "marginal performers" and that these steps were not followed. Plaintiff's response brief, p. 11. Defendant has identified the EDS publications as two management guidelines, "Leading People" and "Quest." Defendant's reply brief, p. 1.

■ As defendant correctly observes, plaintiff cannot rely upon either of these publications because they are not properly before the court. Rule 56(e) of the Federal Rules of Civil Procedure mandates that a party's response to a motion for summary judgment must be supported "by affidavits or as otherwise provided in this rule." The Supreme Court has observed that this language requires a party opposing a motion for summary judgment to rely only upon admissible evidence introduced by affidavit or by the discovery devices listed in Rule 56(c) of the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court has held that materials attached to memoranda opposing summary judgment should not even be considered by the trial court unless they are properly admitted as record evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Plaintiff has not attempted to introduce these documents by affidavit or otherwise as mandated by Rules 56(c) and (e). Therefore, these documents cannot be used to support plaintiff's opposition to EDS' motion for summary judgment.

■ Even in cases in which these same publications cited by plaintiff are properly in evidence, federal courts have found that the procedures stated therein do not constitute EDS policy and thus did not alter an employee's at will status. *Rosinski v. Electronic Data Systems Corp.*, No. 89–CV–73512, —— F.Supp. —— (E.D.Mich. Sept. 13, 1990); *Triplett v. Electronic Data Systems Corp.*, 710 F.Supp. 667 (W.D.Mich.1989), *affd*, 900 F.2d 260 (6th Cir.1990); *Gozdor v. Electronic Data Systems Corp.*, No. 88–CV–4695, 1989 WL 222981 (E.D.Mich. April 17, 1989). Each of these cases held that EDS' management guidelines were not for use by employees, but only by managers, and that the manuals expressly stated that they were only guidelines, not policy. In *Triplett*, the court held as follows:

> It is clear, however, that this guide was never intended or understood to be part of the employment contract. The guide itself expressly provides it is 'intended for use by EDS managers only.' ... EDS obviously attempted to avoid the 'situation instinct with an obligation,' recognized in *Toussaint* as the basis for an implied duty not to discharge except for cause.

*Triplett*, 710 F.Supp. at 673. *See also Rosinski*, —— F.Supp. at ——. Thus, even if the management guidelines were properly in evidence, they could not effect a change in plaintiff's status as an at will employee.

■ In addition, it is undisputed that plaintiff was advised at the outset of his employment at EDS that he was employed at will. Plaintiff admits that shortly after he began employment at EDS he received and reviewed a copy of a stock prospectus coincident to his participation in EDS' Stock Incentive Plan, which expressly provided that plaintiff could be terminated at any time for any reason. (Appendix 3, p. 9 of defendant's brief in support).

The language in the prospectus put plaintiff on notice that his employment at EDS was at will, particularly in light of the absence of any EDS representations contrary to the statement in the prospectus. The Honorable Lawrence Zatkoff reached

the identical conclusion in a recent case involving a former EDS employee who received the prospectus through his participation in the Stock Incentive Plan. *Rosinski v. EDS*, 770 F.Supp. 359 (E.D.Mich. 1990). Judge Zatkoff noted that the prospectus' language "obviously indicates that employment is at will" in ruling that EDS was entitled to summary judgment on plaintiff Rosinski's *Toussaint* claims. *Id.*, at ——.

■ Plaintiff's at will employment status was further affirmed in the spring of 1989 by the dissemination of the EDS Benefits Handbook. The handbook, distributed to all EDS employees between March 20 and April 7, 1989, stated in pertinent part, "All employment at EDS is at will and may be ended by either party, at any time, without notice." (Appendix 4 to defendant's brief in support, p. 9). Such statements in employee manuals legally foreclose a *Toussaint* claim, particularly where, as here, there is no evidence of representations inconsistent with such at will language. *See*, e.g., *Elsey*, 917 F.2d 256; *Vollrath*, 899 F.2d 533; *Dell*, 811 F.2d 970; *Pratt*, 855 F.2d at 1234–6.

■ Though plaintiff claims that he does not recall receiving a copy of the handbook, its disclaimer is effective in light of the uniform and reasonable method of distributing the manual throughout the company. The Michigan Court of Appeals recently held that even when a plaintiff-employee denies receiving a policy statement containing an at will disclaimer, the contents of the statement effectively foreclose the employee's *Toussaint* claim so long as the method employed to distribute the policy statement was "uniform and reasonable." *Grow v. General Products, Inc.*, 184 Mich.App. 379, 457 N.W.2d 167, 171 (1990) ("Reasonable notification is not necessarily actual notification.") Plaintiff makes no assertions that EDS' method of distributing the handbook was not uniform and reasonable. Therefore, plaintiff is found to have had sufficient notice that his employment was at will.

Plaintiff has failed to present sufficient evidence to show that he had either a just cause contract with defendant or a legitimate expectation of such a contract. There remain no genuine issues of material fact regarding Count I of the complaint, and defendant EDS is entitled to summary judgment on that count.

### B. Count II: Breach of Written Employment Contract

In Count II of the complaint, plaintiff claims that his Performance Improvement Plan ("PIP") was a written employment contract breached by EDS. As set forth below, the PIP was not a contract of employment. Even if it could be construed as such, it was not breached by EDS.

■ Plaintiff alleges that the PIP was a thirty (30) day contract which, if fulfilled by plaintiff, precluded his subsequent termination from EDS employment. However, three times in the PIP it is stated that improvement and performance had to be immediate and "sustained." Appendix 8 to defendant's brief. Plaintiff conceded there is no language in the PIP which stated or implied that plaintiff would not or could not be terminated even if he completed the PIP's prerequisites. Transou deposition, pp. 78–79. Thus, the express terms of the PIP do not support plaintiff's claim.

The aforementioned SIP prospectus and Employee Benefits Handbook put plaintiff on notice that he was employed at will by EDS. There was nothing in the PIP that would indicate that plaintiff's at will status was altered in any way by the plan. Therefore, plaintiff has failed to establish a basis for an implied contract of termination only for cause arising from the PIP.

■ Even if the PIP could be construed as a contract of employment, it was not breached by EDS. It is undisputed that plaintiff performed satisfactorily for the thirty (30) days following initiation of the PIP, and defendant did not discharge plaintiff during that time. Plaintiff's employment was terminated at a time when the PIP was no longer in effect.

Plaintiff has failed to present sufficient evidence to prove that the PIP was an employment contract which ensured that

plaintiff could be discharged only for cause. Therefore, summary judgment for defendant EDS is proper with respect to Count II of the complaint.

## C. Count III: Race Discrimination

■ In Count III of his complaint, plaintiff claims that EDS violated the Michigan Elliott–Larsen Civil Rights Act by failing to promote him and by terminating his employment because of his race. Such claims feature a shifting burden of proof. First, the plaintiff is required to factually establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1982); *Carden v. General Motors*, 156 Mich.App. 202, 210, 401 N.W.2d 273 (1986), *leave denied*, 428 Mich. 891 (1987). The defendant then must articulate a legitimate, non-discriminatory reason for its conduct toward the plaintiff. Subsequently, the burden reverts back to the plaintiff, who must show that the defendant's non-discriminatory explanation is a pretext for discrimination. *Guyton v. Wayne State University*, 46 FEP Cases 460, 463 (E.D.Mich.1988). *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).[2] However, the ultimate burden to prove that the defendant intentionally discriminated against him because of his race "is a burden that [plaintiff] retains at all times." *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1271 (6th Cir.1986); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Grubb*, 741 F.2d at 1494 (6th Cir.1984); *Fields v. Bolger*, 723 F.2d 1216, 1219 (6th Cir.1984).

Summary judgment is appropriate in Elliott–Larsen cases "where plaintiff cannot factually establish a prima facie case, or where plaintiff cannot establish a genuine issue of fact as to whether the non-discriminatory reasons offered by defendant are but a mere pretext." *Guyton*, 46 FEP Cases at 463 (citing *Pomranky v. Zack Co.,*

159 Mich.App. 338, 405 N.W.2d 881 (1987)); *see Cox v. Electronic Data Systems Corporation*, 751 F.Supp. 680, 690 (E.D.Mich. 1990).

■ There are two means for establishing a prima facie case of race discrimination under the Elliott–Larsen Act. Under the first approach, commonly referred to as the disparate treatment analysis, the plaintiff must factually establish a) that he/she is a member of a protected class and b) that he/she was treated differently than similarly situated members of a non-protected class. *Merriweather v. International Business Machines*, 712 F.Supp. 556, 564 (E.D.Mich.1989) (citing *Schipani v. Ford Motor Co.*, 102 Mich App. 606, 302 N.W.2d 307 (1981)).

■ Using the second approach, commonly referred to as the intentional discrimination analysis, the plaintiff may establish a prima facie case of discrimination by showing each of the following: 1) that he/she is a member of an affected class, 2) that an action was taken with respect to his/her employment, 3) that the acting person was predisposed to discriminate against persons of the affected class, and 4) that the acting person actually acted on that disposition. *Cox*, 751 F.Supp. at 690; *Guyton*, 46 FEP Cases at 463.

In the instant action plaintiff has filed a motion for partial summary judgment regarding defendant's liability for race discrimination. Plaintiff contends that defendant discriminated under both the disparate treatment and intentional discrimination analyses.

### 1. Disparate Treatment Analysis

Under the disparate treatment approach, the first criteria is not in dispute. Plaintiff is a black male, and as such, a member of a protected class. The gravamen of plaintiff's complaint is that he was treated differently from other similarly situated nonblack EDS employees because all of the

---

**2.** Although *Burdine* involved an interpretation of Title VII of the Federal Civil Rights Act of 1964, Michigan courts frequently look to federal jurisprudence to interpret the Elliott–Larsen Act. *See Michigan Civil Rights Commission ex*

*rel. Boyd v. Chrysler Corp.,* 80 Mich.App. 368, 375 n. 4, 263 N.W.2d 376 (1977); *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1493 (6th Cir.1984).

computer operators at the Lake Orion plant committed the same errors, but only plaintiff's employment was terminated as a result of these common errors.[3]

■ Plaintiff alleges that there were nine employees similarly situated to plaintiff. In his brief plaintiff cites numerous examples of errors committed by all of these employees. Defendant contends, however, that only two other employees were similarly situated to plaintiff. Defendant admits that all nine employees worked as computer operators, but only plaintiff and two others, a white male and a Hispanic male, were not Operations Development Program trainees. It is fundamental to plaintiff's discrimination claim that he show that the comparables are similarly situated *"in all respects."* *Cox,* 751 F.Supp. at 691 (emphasis in original). The court finds that as trainees, the other six computer operators were not similarly situated to plaintiff at EDS, and evidence of their mistakes and actions taken against them by EDS management is immaterial in the present suit.

■ The actions of two EDS employees who were similarly situated to plaintiff were also used as examples in plaintiff's proofs. The issue to be determined at this point is whether plaintiff was treated differently from those two employees. Defendant concedes that plaintiff was treated differently from the other two, as only plaintiff was placed on a PIP and then terminated.

■ The burden of proof then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its conduct toward the plaintiff. Defendant has submitted unrefuted affidavits by EDS managers which state that plaintiff committed more errors than the other two computer operators combined. At deposition plaintiff admitted to making many of the errors that were cited by EDS as reasons for plaintiff's termination. Since it is the number of errors committed by plaintiff which

led to defendant's actions against plaintiff, defendant has shown a legitimate non-discriminatory reason for its conduct.

■ The burden of proof reverts to the plaintiff, who must show that the defendant's non-discriminatory explanation is a pretext for discrimination. Plaintiff claims, "Defendant has offered no specific rebuttal evidence in the way of legitimate non-discriminatory business justifications for the treatment accorded plaintiff." Plaintiff's brief in support of motion for partial summary judgment, p. 20. In plaintiff's response brief, however, he attempts to show that the business reasons given are so "ridden with error," that defendant could not honestly have relied on them and that the explanation is unworthy of credence. Plaintiff's response brief, p. 18. Plaintiff again pointed to some inconsistencies between remarks on his May 18, 1989 job appraisal and the reasons for his discharge. The court finds plaintiff's argument unpersuasive because of plaintiff's failure to address the *number* of errors he concedes he committed. Therefore, plaintiff has failed to meet his burden of showing that defendant's explanation is a pretext under the disparate treatment analysis.

### 2. Intentional Discrimination Analysis

■ In order to make a prima facie showing of intentional discrimination, plaintiff must prove that the person acting on plaintiff's employment was predisposed to discriminate against blacks and that the person actually acted on that disposition. Plaintiff's allegation that EDS is "a company steeped in a racist culture and tradition" is unsubstantiated. Plaintiff's brief in support, p. 13.

Plaintiff repeatedly refers to an instance in which the EDS account manager who fired plaintiff had previously fired a black employee by going to Detroit Metropolitan Airport to fire him on the spot after the

---

**3.** Plaintiff stated, "In any event, *all* of the events where [sic] generic, and experienced by every operator. If [p]laintiff had not wrote [sic] them up, most would have never came [sic] to the attention of [p]laintiff's mangers [sic] ..." Plaintiff's Response, p. 16. (emphasis in original).

employee had called in sick. That employee had earlier been denied vacation time by the company. Plaintiff contends that this action proves that the supervisor was predisposed to discriminate against black employees. Plaintiff further contends that by firing plaintiff, the supervisor actually acted on that disposition. The court finds plaintiff's argument using the intentional discrimination analysis entirely insufficient to establish a prima facie case under the intentional discrimination analysis. Consequently, defendant is entitled to summary judgment on Count III of the complaint.

### D. Count IV: Age Discrimination

 Plaintiff has alleged that defendant's employment actions taken against him were also based on age discrimination, an additional violation under the Elliott–Larsen Civil Rights Act. The methods of proving such a claim are identical to those covered in analyzing Count III of the complaint. *Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981).

At the time of his termination, plaintiff was 47 years old. The other two computer operators who have already been deemed similarly situated by the court were 50 years old and 42 years old. All of the evidence presented by plaintiff regarding this count of the complaint compares actions taken against plaintiff with actions taken against EDS employees who were in their twenties. However, *all* of them were trainees, and thus, not similarly situated to plaintiff. In addition, plaintiff has not produced a single statement or comment by defendant that referred to plaintiff's age. Plaintiff's total lack of evidence to support a prima facie claim of age discrimination entitles defendant to summary judgment on Count IV of the complaint.

Because plaintiff has failed to present any genuine issues of material fact regarding all four remaining counts of the complaint, the court finds that defendant is entitled to summary judgment on all four counts.

### II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff filed a motion for partial summary judgment of liability on his claims of race discrimination. Those allegations were addressed and decided in the previous portion of this memorandum opinion and order. For the reasons previously set forth, plaintiff's motion for partial summary judgment will be denied.

### III. DEFENDANT'S MOTION FOR SANCTIONS

Concurrent with its May 10, 1991 response to plaintiff's motion for partial summary judgment, defendant filed a motion for sanctions against plaintiff's counsel for filing an allegedly frivolous motion that is lacking basis in fact and law. An attorney who files any pleading which is factually and legally unsupported violates the Federal Rules of Civil Procedure. Rule 11 provides the following:

> ... The signature of an attorney or party constitutes a certificate by him that he has read the pleading ... that to the best of his knowledge, information, and belief ... it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose ...

Fed.R.Civ.P. 11.

The court finds that plaintiff's motion for partial summary judgment is not so ill grounded in fact and law as to merit Rule 11 sanctions.

### IV. PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff concurrently filed a motion for sanctions against defense counsel in plaintiff's reply to his first motion in limine. In addition to the portion of the rule quoted above, Rule 11 also provides, in pertinent part:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed

it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added).

The court finds that plaintiff's motion for sanctions is so entirely lacking in merit that *plaintiff's counsel*, not defendant, should be sanctioned. However, since defendant did not file a response to plaintiff's motion, defendant's loss is negligible; and the plaintiff will not be sanctioned.

## V. PLAINTIFF'S SEVEN MOTIONS IN LIMINE

In light of the court's granting of defendant's motion for summary judgment as to the remaining counts of the complaint, all of plaintiff's motions in limine are rendered moot.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment is MOOT.

IT IS FURTHER ORDERED that defendant's motion for sanctions is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for sanctions is DENIED.

IT IS FURTHER ORDERED that plaintiff's motions in limine are MOOT.

SO ORDERED. A judgment in accordance with this order shall be entered with the clerk of the court.