85 F.3d 628
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gloria COLEMAN, Plaintiff-Appellant,
v.
SUN FINANCIAL GROUP and Sun Life Assurance Company of
Canada, Defendant-Appellee.
 No. 94-2380.
 United States Court of Appeals, Sixth Circuit.
 May 13, 1996.
 
 Before: KEITH, NELSON AND SILER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant, Gloria Coleman ("Coleman"), appeals the district court's granting of summary judgment in favor of the Defendant-Appellee, Sun Life Assurance Company of Canada ("Sun Life").[1] For the reasons stated below, we AFFIRM the district court's granting of summary judgment in favor of Sun Life.
 
 I. Statement of the Case
 
 2
 Coleman was hired by Sun Life, in 1966, as a secretary. Coleman was born on January 21, 1949. By 1981, Coleman had been promoted to co-office manager, with Joan Kasparian ("Kasparian"), at Sun Life's Greater Detroit facility. Sun Life opened a second office in metro Detroit known as the Detroit Regency Branch. Kasparian was transferred to the new office to act as office manager. As a result, Coleman remained the office manager at the Greater Detroit office.
 
 
 3
 As office manager, Coleman reported to the Greater Detroit office branch manager, Jerry Rubin ("Rubin"). Coleman prepared reports, budgets, called on clients, and prepared pension and profit sharing proposals for the sales staff, in addition to other clerical duties. Though Coleman also contends she performed some insurance sales work. Sun Life disputes this claim arguing she was not acting as a salesperson but was performing duties at the behest of the sales staff.
 
 
 4
 In 1990, Sun Life removed Rubin as branch manager because of the Greater Detroit office's poor financial performance. Sun Life retained an employment agency to conduct a search for Rubin's replacement. After the employment search began, Coleman called Thomas Hopkins ("Hopkins"), the Sun Life Vice President responsible for the two Detroit offices, and suggested she would be willing to replace Rubin at half his salary. Coleman claims Hopkins laughed at her suggestion. Hopkins informed Coleman they were looking for an individual who was licensed to sell insurance and had experience in recruiting, managing and training salespersons; Coleman met none of these requirements. As a result, Coleman never formally applied for the position.
 
 
 5
 During the year-long search to replace Rubin, the financial performance of the Greater Detroit office continued to slip. Sun Life decided to consolidate the Detroit offices and not replace Rubin. Sun Life moved Rubin to the consolidated office to serve as a salesperson.
 
 
 6
 On April 1, 1991, Hopkins decided to retain Kasparian in the position of office manager for the consolidated office and terminated Coleman's employment. Hopkins testified at deposition that Kasparian was retained over Coleman because she had more seniority, had a five-year working relationship with the branch manager for the consolidated office and was familiar with Sun Life's home office in Massachusetts. Coleman was offered and accepted a severance package entitling her to 51 weeks of pay. No one at Sun Life complained about Coleman's work performance.
 
 
 7
 Approximately six months after her termination, Coleman applied for a secretarial position with a Sun Life satellite office in Farmington Hills, Michigan. Coleman claims the agent running the satellite office, Stan Rosenfield ("Rosenfield"), offered her employment as his secretary. Rosenfield, however, retracted this offer. Sun Life management suggested to Rosenfield that hiring Coleman might not be a good idea due to her already receiving severance pay. Sun Life eventually placed Sun Life employee, Debbie Nickel ("Nickel"), who is younger than Coleman, as the secretary in the satellite office.
 
 
 8
 On October 11, 1993, Coleman filed the instant suit against Sun Life in the United States District Court for the Eastern District of Michigan. Federal jurisdiction was based on diversity of citizenship, pursuant to 28 U.S.C. § 1331. Coleman's complaint alleged Sun Life failed to promote her and terminated her because of her age and/or gender, in violation of Michigan's Elliott-Larsen Civil Rights Act, Michigan Compiled Laws Annotated ("M.C.L.A.") § 37.2101-37.2804. Coleman's complaint also included state breach and interference of contract claims. At the conclusion of discovery, Sun Life filed a motion for summary judgment. On September 16, 1994, the district court heard oral argument on Sun Life's motion for summary judgment. Following oral argument, the district court granted Sun Life's motion and dismissed the complaint with prejudice. The district court found Coleman had not presented a prima facie case of either age or gender discrimination.
 
 
 9
 Coleman filed a timely notice of appeal.
 
 II. Discussion
 
 10
 On appeal, Coleman argues the district court erred by granting Sun Life's motion for summary judgment and dismissing her claims with prejudice. Coleman contends she established a prima facie case showing Sun Life discriminated against her by firing her, failing to promote her and failing to re-hire her due to her age and/or gender.
 
 A. Standard of Review
 
 11
 We review the granting of a motion for summary judgment de novo. Russo v. City of Cincinnati, 953 F.2d 1036, 1041 (6th Cir.1992). Summary judgment is appropriate when after reviewing the evidence and any justifiable inferences in a light most favorable to the non-moving party, there is no genuine issue of material fact upon which relief can be granted. Fed.R.Civ.P. 56(c); Russo, 953 F.2d at 1042; 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). In addition, the moving party is entitled to judgment as a matter of law when "the non-moving party has failed to make a sufficient showing on an essential element of [the] case with respect to which [it has] the burden of proof." Celotex v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 12
 B. Michigan's Elliott-Larsen Civil Rights Act
 
 
 13
 Michigan's Elliott-Larsen Civil Rights Act states in relevant part:
 
 
 14
 (1) An employer shall not:
 
 
 15
 (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of ... sex [or] age.
 
 
 16
 (b) Limit, segregate or classify an employee or applicant for employment in any way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of ... sex or age.
 
 
 17
 M.C.L.A. § 37.2202(1)(a-b).
 
 
 18
 In order for a plaintiff to maintain an Elliott-Larsen claim, he/she must first establish a prima facie case of discrimination. Howard v. Canteen Corp., 192 Mich.App. 427, 432, 481 N.W.2d 718, 722 (1991); Pomranky v. Zack Co., 159 Mich.App. 338, 343, 405 N.W.2d 881, 883 (1987). In an employment discrimination claim involving failure to promote, the employee must show: (1) he or she belongs to the protected group, (2) he or she applied for an available position for which he or she was qualified, and (3) he or she was rejected under circumstances giving rise to an inference of unlawful discrimination. Howard, 192 Mich.App. at 431-32, 481 N.W.2d at 722; Pomranky, 159 Mich.App. at 343-44, 405 N.W.2d at 883-83. In an employment discrimination claim involving termination, the employee must show: (1) he or she was discharged, (2) the individual defendant discharging him or her was predisposed to discriminate against the protected group, and (3) the individual defendant acted on that predisposition in discharging the plaintiff. Brewster v. Martin Marietta Aluminum Sales, Inc., 145 Mich.App. 641, 654, 378 N.W.2d 558, 563 (1985). In age discrimination claims, a plaintiff must show he or she is a member of a protected class, qualified for the position, was discharged, and was replaced by a younger person. Featherly v. Teledyne Indus., Inc., 194 Mich.App. 352, 358, 486 N.W.2d 361, 364 (1992).
 
 
 19
 In the alternative, Michigan law allows an employee to establish a prima facie case of discrimination by showing what it has termed "disparate treatment." To establish a prima facie case under a disparate treatment theory, a plaintiff must show (1) he or she was a member of a protected class and (2) he or she was treated differently from similarly situated members of a non-protected group. Singal v. General Motors Corp., 179 Mich.App. 497, 503, 447 N.W.2d 152, 156 (1989).
 
 
 20
 Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, non discriminatory reason for the action involving the plaintiff. Matras v. Amoco Oil Co., 424 Mich. 675, 684, 385 N.W.2d 586, 590 (1986); Dubey v. Stroh Brewery Co., 185 Mich.App. 561, 563, 462 N.W.2d 758, 759 (1990); Jenkins v. Southeastern Michigan Chapter, American Red Cross, 141 Mich.App. 785, 794, 369 N.W.2d 223, 228 (1985). In the past, when ruling on similar claims under Michigan law, we have held that one legitimate business reason for an employer to discharge an employee is corporate reorganization or reduction in force. LeGrant v. Gulf & Western Manufacturing Co, Inc. 748 F.2d 1087, 1090 (6th Cir.1984).
 
 
 21
 Finally, if the defendant can establish a legitimate, non-discriminatory basis for its action, the burden shifts back to the plaintiff to show by a preponderance of the evidence that defendant's business reason was mere pretext for discrimination. Dubey, 185 Mich.App. at 563, 462 N.W.2d at 759; Jenkins, 141 Mich.App. at 794, 369 N.W.2d at 228. If the defendant's legitimate business reason is reorganization "[t]he plaintiff ... must come forward with additional direct, circumstantial or statistical evidence that age [or gender] was a factor in [the alleged discriminatory action]." LeGrant, 748 F.2d at 1091.
 
 
 22
 Coleman first asserts Sun Life discriminated against her due to her gender by failing to promote her to Rubin's branch manager position. Coleman's contention lacks merit because she never applied for the position. She claims to have asked Hopkins to be considered for the position. However, she never filed an application, wrote the hiring agency or the company asking to have her name considered for the position nor did she make any other affirmative action towards securing the position. Even if Coleman had applied for the branch manager's position, Sun Life had legitimate business reasons for not hiring her. Sun Life was looking for an individual who was licensed to sell insurance and had experience in recruiting, managing and training salespersons; Coleman met none of these requirements. Thus, Sun Life did not violate the Elliott-Larsen act by failing to promote Coleman to the position of branch manager.
 
 
 23
 Coleman's second claim is Sun Life engaged in age discrimination when it terminated her despite her seniority and acknowledged good work record. However, Coleman's termination resulted from the consolidation of the Sun Life's offices and the corresponding reduction in their work force. In addition, Kasparian was chosen to be the office manager of the consolidated office based on her seniority, work record, the fact she had an existing working relationship with the branch manager and her familiarity with Sun Life's home office in Massachusetts. As previously noted, such reasons provide a legitimate, non-discriminatory basis for terminating Coleman's employment.
 
 
 24
 Lastly, Coleman claims Sun Life discriminated against her due to her age by failing to re-hire her for a secretarial position at their satellite office and transferring a younger person to the position. However, this claim must fail because it was not properly raised or adequately preserved in the district court.
 
 
 25
 Even considering the substance of Coleman's claim on this issue, her argument lacks merit. The mere fact Sun Life transferred a younger employee to fill the position Coleman wanted is not enough to establish age discrimination. In addition, the record indicates Sun Life had legitimate financial reasons to support placing another employee at the satellite office. Thus, it is clear Sun Life did not discriminate against Coleman by failing to re-hire her.
 
 III. Conclusion
 
 26
 For the reasons stated above, we AFFIRM the decision by the Honorable Patrick J. Duggan, United States District Court Judge for the Eastern District of Michigan, to grant Sun Life's motion for summary judgment.
 
 
 
 [1]
 Coleman's complaint named both Sun Life and the Sun Financial Group as defendants. The Sun Financial Group is a marketing name for Sun Life. To avoid confusion, this opinion will use the term Sun Life when referring to either Sun Life or the Sun Financial Group